## IN RE MICHAEL BION.

Hartford Dist., May T., 1890.   CARPENTER, LOOMIS, SEYMOUR and
TORRANCE, Js.

Under Gen. Statutes, § 695, which authorizes justices of the peace to require sureties of the peace from persons threatening personal violence against others, on the complaint of any person on oath that he has just cause to fear such violence, the complaint may be made to, and the warrant issued by, one justice of the peace, and the case heard and the sureties required by another justice.

A writ of habeas corpus cannot operate to bring in review mere irregularities or errors of procedure, or questions as to the sufficiency of evidence, in the case upon which the applicant was committed.

[Argued May 6th,—decided September 12th, 1890.]

APPLICATION for a writ of habeas corpus, made to *Andrews, C. J.*, as a judge of the Superior Court. The judge issued an alternative writ, directed to the sheriff of Litchfield County, who held Bion in jail, and his return set forth the mittimus of Samuel A. Bennett, a justice of the peace, who had committed him upon his failure to give bonds to keep the peace.

The complaint upon which Bion was arrested and brought before the justice was made by one Dunning, of the town of North Canaan in Litchfield County, to Jacob B. Hardenburgh, a justice of the peace for that county residing in that town, on the 10th day of October, 1889, and alleged threats made by Bion against the complainant on the 7th day of October, 1889, to "beat, wound and kill" him, and that the complainant feared that he would kill him or inflict upon him great bodily harm. The complaint was sworn to by

Dunning before Justice Hardenburgh, who issued upon it the following warrant:—

" To the sheriff of the county of Litchfield or his deputy, or either of the constables of the town of North Canaan, within said county—*Greeting :*

" By authority of the State of Connecticut you are hereby commanded to arrest the body of the within named Michael Bion, and him forthwith have before the subscriber, a justice of the peace for said county, or some other justice of the peace for said county, in said town of North Canaan, in answer to the charges alleged against him in the foregoing complaint of Lyman Dunning of the town of North Canaan, and be dealt with thereon as the law directs. Hereof fail not, but of this warrant service and return make according to law. Dated at North Canaan, the 10th day of October, 1889.

" JACOB B. HARDENBURGH.

" *Justice of the Peace.*"

The mittimus, which was set out in the return, was as follows :

" To the sheriff of the county of Litchfield, his deputy or either of the constables of the town of North Canaan, in said county—*Greeting :*

" Whereas Michael Bion of North Canaan, on the 18th day of November, 1889, was brought before me by virtue of a warrant issued on the complaint, on oath, of Lyman Dunning of said town of North Canaan, in the name and behalf of the people of the state of Connecticut, charging the said Bion that on the 7th day of October, 1889, at said North Canaan, the said Bion with force and arms did threaten that he would before long beat, wound and kill the said complainant, or do him some great bodily harm, and that said Lyman Dunning has just cause to fear, and that he doth fear, that the said Bion will beat, kill or wound him, or do him some great bodily harm, or procure others to do the same, and that he is under fear of death or bodily injury from said Bion ; and the said Bion by his unlawful acts does terrify and disturb the good people of this state ; which will

more fully appear from the complaint and judgment had thereon, against the peace, and contrary to the statute in such case made and provided; and the said Michael Bion being required to answer to said complaint, pleaded that he was not guilty, and having inquired into the facts, I did find that the said Michael Bion was guilty, and thereupon it was considered and ordered by me that the said Michael Bion should become bound with sufficient surety to the state of Connecticut, in the sum of five thousand dollars, conditioned that he should appear before the Superior Court, to be holden at New Milford, in and for said county, on the 1st Tuesday of April, 1890, then and there to answer to said complaint, and abide the judgment of said court thereon, and that in the meantime he keep the peace and be of good behavior to all the citizens of the state, and especially towards the said Lyman Dunning, and that he stand committed until sentence be complied with; and the said Bion having neglected and refused to become bound as aforesaid, after a reasonable time allowed for the same:

" These are therefore by authority of the state of Connecticut to command you to take and convey the said Michael Bion to the common jail, in the town of Litchfield, in the county of Litchfield, and there deliver him, together with this warrant, to the keeper thereof, who is hereby required to receive the said Bion into his custody within said jail, and him safely keep until he shall be delivered by due course of law.    Dated at North Canaan, this 19th day of November, 1889.                                " SAMUEL A. BENNETT,
                                  " Justice of the Peace."

To this return the applicant made the following answer:—
" And the said Michael Bion replies to said return and says :—

" 1. Said mittimus mentioned in said return was signed and issued by one Samuel A. Bennett, a justice of the peace, and said Bennett, justice of the peace, had no jurisdiction over said cause and his judgment is void, because the complaint in said cause against said Bion was made to, and sworn

to before, Jacob B. Hardenburgh, a justice of the peace, and the said Bion was arrested thereon and taken before said Samuel A. Bennett, and not before said Jacob B. Hardenburgh, the justice of the peace to whom the said complaint was made, as required by the statute under which the said complaint was brought. All of which will more fully appear from the complaint and record in said cause, a copy of which is hereunto annexed and made a part of this reply.

" 2. No legal evidence was offered at the trial before said Justice Bennett, and no evidence was offered except the evidence of Lyman Dunning, a copy of which is hereunto annexed, and no direct evidence of any kind supporting any of the statements in said complaint was offered, but all the testimony of said Dunning was to matters of hearsay, to which the attorney for said Bion duly objected, as will appear in the copy of said evidence hereto annexed and made a part of this reply.

" 3. The bail required from said Bion by said Justice Bennett, to wit, the sum of five thousand dollars, was and is excessive, and by reason of such excessive bail so being required he has been confined upon said mittimus, and said sum was more than the nature of said offense or the evidence upon the trial of the same justified.

" 4. The confinement of said Michael Bion is contrary to the provisions of the constitution of this state and of the United States, in that he has already been punished and his liberty put in jeopardy for the same offense.

" 5. The said Michael Bion had no opportunity to testify or be heard before said Justice Bennett."

The respondent demurred to the answer to the return, and the judge sustained the demurrer to the first and second paragraphs of the return, and found the issue for the applicant on paragraphs four and five. On the third paragraph the demurrer was overruled, the bail found to be excessive, and the amount of bail required reduced to fifteen hundred dollars. In all other respects the mittimus was found to be lawful and proper, and the application for a release from

imprisonment was denied.   The applicant appealed to this court.

*S. J. Nickerson*, for the appellant.

1.  Justice Bennett, before whom Bion was tried, had no jurisdiction.   The complaint had been made to Justice Hardenburgh, under the provisions of Gen. Statutes, § 695.   In no other section of the statutes is there any authority conferred upon justices to require sureties of the peace.   All their jurisdiction upon that subject is confined to this section. A careful inspection of it clearly shows that the only justice who can require sureties of the peace from a person complained of is the justice to whom the complaint is made. Such construction has always been given to statutes worded in similar language.   Under the provisions of section 691, could it be successfully claimed that any justice, other than the one to whom the sworn complaint was made, had authority to issue a search warrant?   And yet the language of the statute is almost precisely similar.   The statute of 1821, relating to bastardy, is also similar in wording to section 695. Revision of 1821, page 91, sec. 1.   It was decided that that statute applied to cases brought by the mother, and that only the justice to whom the complaint was made could bind over.   *Hopkins* v. *Plainfield*, 7 Conn., 286.   If it is claimed that any general provisions of the statutes control, we reply, that the power to require sureties of the peace is a special jurisdiction given to justices in section 695 ; and special jurisdiction cannot be controlled by the general provisions of the statute prescribing jurisdiction in criminal cases.   2 Swift's Digest, 394 ; *Pardee* v. *Platt*, 20 Conn., 402.   This statute should be strictly construed.   No authority can be presumed by a court beyond the plain provisions of the statute giving jurisdiction.   *Palmer* v. *Palmer*, 6 Conn., 414.   The greatest strictness and regularity should be observed in all matters, either of jurisdiction or form, where the liberty of the citizen is involved.   Where a complaint was made to one justice and the warrant signed by another justice, the warrant was held to be void.   Both of these principles are distinctly laid

down in *Perry* v. *Johnson*, 37 Conn., 35. When it appears that the magistrate had no jurisdiction, the proceedings are wholly void, and the party is entitled to be discharged on habeas corpus. *Herrick's Case*, 1 Gray, 50 ; Church on Habeas Corpus, § 93.

2. The complainant should have been discharged upon the facts set forth in the second paragraph of the reply to the return. These facts are admitted by the demurrer. It stands then admitted upon the record, that no legal evidence was offered at the trial before Justice Bennett, and therefore that Bion was ordered to give $5,000 bonds, and in default was committed to jail, when there had been no legal testimony against him. And we are told by this demurrer that the victim of such an extraordinary proceeding can obtain no relief here, simply because the arbitrary justice before whom he was taken, and who ordered him to give such an excessive bond, was cunning enough to draft his mittimus in regular form. The object of the writ of habeas corpus is to liberate those imprisoned without sufficient cause. It brings the body up, together with the cause of commitment. The court can inquire into the sufficiency of that cause. Church on Habeas Corpus, § 230; *Ex parte Watkins*, 3 Pet., 201 ; *Ex parte Bollman*, 4 Cranch, 75. The court has a right to, and should, examine the evidence and the entire proceedings before the committing magistrate. In all cases upon this writ the court will look into the evidence and, though the commitment be full, and in due form, yet if the testimony proves no crime the court will discharge. Church on Habeas Corpus, § 235; *Com.* v. *Rutherford*, 5 Rand. (Va.), 646; *Lumm* v. *The State*, 3 Port. (Ind.), 293; *Street* v. *The State*, 43 Miss., 1; *Ex parte Jenkins*, 2 Wall. Jr., 521. Church in his treatise in the section referred to, after commenting upon both rules, lays down the law as follows : " Courts and judges should have, and do have to a great extent where this rule prevails, authority to revise the cause of commitment, and to examine into the truth of the facts alleged in the return, and may examine into the merits of the commitment, and hear the allegations and proofs arising

thereon in a summary way, and *dispose of the party as justice may require.* The rule works well both ways. The doctrine of looking behind the commitment of the magistrate protects alike the interests of the accused and of the commonwealth. * * * Notwithstanding the opinion entertained by some judges that it is beyond the domain of their duties to sit as an appellate court to review the sentences of committing magistrates, it is undoubtedly the intention of the law, as found in the statutory provisions, to give an individual committed for a crime by an examining magistrate an appeal from his commitment to the higher judges by virtue of the writ of habeas corpus; and, where this second rule prevails, it seems to be in harmony with every principle of law and justice." It is undoubtedly the intention of our statute to enable any person upon habeas corpus to have the cause of his imprisonment and the evidence upon which he was committed, examined by the court or judge. Gen. Statutes, §§ 1046, 1271. It is claimed in the return that Justice Bennett inquired into the facts and found Bion guilty. The reply to the return states that there was no legal evidence offered, and that no direct evidence of any kind supporting the complaint was offered, which is admitted upon the record. In *People* v. *Martin,* 1 Parker Crim. R., 191, EDMONDS, J., says : " It is claimed in this case, in behalf of the prosecution, that the commitment of the magistrate is conclusive, and that I have no right on this return to look beyond the question of its regularity, or, if I do look beyond it, I can look only at the position taken before the magistrate. I had understood the law otherwise, and I have always supposed that by means of this writ the officers who were authorized to allow it were by its very nature clothed with a certain revisory power over those by whose mandate any person might be restrained of his liberty." In *Bennett's Case,* 2 Cranch C. C., 612, it was held that the court would inquire into the evidence before the committing magistrate, and this, although the warrant of commitment be regular and formal. In *Ex parte Burford,* 3 Cranch S. C., 448, the same principle was sanctioned and the prisoner discharged.

In *Stepen's Case*, 1 Wheeler Crim. Cases, 323, the court held that the evidence before the committing magistrate should always be inquired into for the purpose of ascertaining if the party was illegally deprived of his liberty. The court says, " all summary proceedings are watched with extreme jealousy by the common law." The same principle is decided in the following cases:—*People* v. *Tompkins*, 1 Parker C. R., 224; *Squires's Case*, 12 Abb. Pr., 38; *People* v. *Richardson*, 18 Howard Pr., 92; *People* v. *Stanley*, id., 179; *Ex parte Harfourd*, 16 Fla., 283; *Cowell* v. *Patterson*, 49 Iowa, 514; *Jones* v. *Darnall*, 103 Ind., 569; *Wales's case*, 4 Mackey, 38; *Ex parte Champion*, 52 Ala., 311; *Ex parte Mohr*, 73 id., 503; *Gerdemann* v. *Com.*, 11 Phila., 374; *Schofield* v. *Root*, 12 id., 333; *In re Snell*, 31 Minn., 110; *In re Hardigan*, 57 Vt., 104; *Ex parte Allen*, 12 Nev., 87; Hurd on Habeas Corpus, 428; 1 Chitty's Crim. Law, 113. The national and state constitutions both provide that no person shall be deprived of liberty except in cases clearly warranted by law. Do those provisions, which have ever been looked upon as holding personal liberty so sacred, mean that the *paper* only upon which he is held need be valid? Does it not apply also to the *evidence* adduced against him, particularly in cases where a man is practically imprisoned for life by the order of a justice of the peace?

3. Bion should have been discharged upon the facts set forth and admitted upon the record. The entire proceedings are set forth in reply to the return. The complaint charged threats, and alleged that the complainant Dunning had just cause to fear, and did fear, bodily harm. There was no proof of anything of the kind. No person who had ever heard Bion make a threat testified. Dunning had never heard him threaten. He had not spoken with Bion for over ten years. He had not seen him in over seven years. Sureties of the peace can only be required to prevent the commission *of a crime anticipated*, and cannot be required to punish for a crime committed. *Sturges* v. *Sherwood*, 15 Conn., 151. What crime is anticipated? What cause has been shown? The only threats which Dunning says *he had*

*been told by others* were made, were, if made at all, between 1871 and 1874. He says Bion has no personal cause for feeling against him. In *Dennis* v. *Lane*, 6 Modern, 131, the court says :—" This demand for sureties of the peace ought to be fresh after the fray or cause of fear given. For the suffering considerable time to pass before the demand of security is a great sign that the party was not afraid." No offense committed in 1883 could have been prosecuted upon a complaint issued in October, 1889. The statute of limitations would prevent. It would seem strangely inconsistent to hold that the prosecution for a crime would be barred by the statute of limitations and, at the same time, hold that the evidence of threats made before the commission of that very crime would warrant a justice of the peace in requiring sureties of the peace from the person who committed it. Even the threats which Dunning testifies *he has been told were made against him*, were made, if made at all, before Bion's conviction. He has been punished for that offense. We submit that his liberty cannot again be put in jeopardy for the same offense. U. S. Constitution, 5th Amendment.

*J. Huntington*, with whom were *W. B. Smith* and *A. D. Warner*, contra.

Loomis, J. The questions for review presented by this appeal arise upon the rulings of a judge of the Superior Court on the trial of a writ of habeas corpus, issued upon application of Michael Bion, in order to procure his release from the county jail, where he was under commitment for non-compliance with the order of a justice of the peace upon a complaint against him, in favor of one Lyman Dunning, for sureties of the peace to prevent the execution of threats on the part of Bion to do great bodily harm to Dunning.

The applicant claims his release from imprisonment upon two independent grounds :—1. That the justice of the peace who tried the original complaint against him, pursuant to which he was committed to jail, had no jurisdiction. 2. That

if the justice had jurisdiction, the evidence before him did not warrant the finding of guilty or the ordering of sureties of the peace.

The first claim is a legitimate one to make, and, if true, must of course prevail. The facts upon which the alleged want of jurisdiction is predicated are simply that the original complaint for sureties of the peace was presented to, and sworn to before, one justice of the peace, namely, Jacob B. Hardenburgh, who issued his warrant thereon directing the arrest of Bion and that he be brought before him (Hardenburgh) " or some other justice of the peace for said county in said town of North Canaan, to answer to the charges alleged against him in the foregoing complaint of Lyman Dunning," etc.; and that by virtue of such a warrant he was arrested and brought before another justice, Samuel A. Bennett, of the same town and county, before whom he was tried and convicted, upon the plea of not guilty, and bound over to the Superior Court; and in the meantime to keep the peace. It is conceded that the process and proceedings were regular in form in every respect, and that Justice Bennett who tried the case was a duly qualified justice; and that he would have had rightful jurisdiction of the complaint had it been first addressed to him and had he issued the warrant of arrest returnable before himself.

The applicant's contention is that section 695 of the General Statutes restricts the jurisdiction in cases of this kind to the one justice of the peace to whom the complaint is first addressed and presented. The section is as follows:—
" Any justice of the peace in the county where he resides, may from his personal knowledge, or upon complaint of another, require sureties of the peace and good behavior from any person who shall threaten to beat or kill another, or who shall abuse any justice of the peace, or resist or abuse any officer in the execution of his office, or contend with angry words, or by any unlawful act terrify and disturb the good people of this state; and when any person shall complain on oath to a justice of the peace that he has just cause to fear that another will imprison, beat or kill the complainant, or

procure others to do so, and that he is under fear of bodily harm, such justice of the peace may, if he believe such person has just cause for such fear, require sureties of the peace and good behavior from the person complained of; and upon refusal of the person so required to find sureties of the peace, in either of said cases, the justice of the peace may commit him to the jail in the county, to remain until he shall be discharged by due course of law, or until the next session of the Superior Court having criminal jurisdiction in said county, which may make further order relating to the subject matter of said offense."

A literal rendering of the statute, without the aid of another statute to which we shall presently refer, would give color to the applicant's claim. This section however, considered by itself, does not necessarily have the meaning attributed to it. The first clause in very general language shows that jurisdiction is conferred in one of two ways—that is, from personal knowledge on the part of the justice, or " upon complaint of another." No details are given as to the steps required to bring " the complaint of another " before the justice who is to try it. This omission, as we shall see, is supplied by another statute. The complaint of another performs precisely the same office, and is every way equally effective, whether upon the annexed warrant the accused is brought to trial before the justice who issued the warrant, or before another justice by authority of the same warrant, there to answer to the same complaint. The latter justice acts as truly " upon complaint of another " as he would if all the proceedings had been rigidly confined to him.

So as to the second clause, which provides that " when any person shall complain on oath to a justice of the peace * * * such justice * * * may require sureties," etc. Here the complaint is to the justice first addressed for the immediate purpose of having a warrant annexed, either to bring the case before himself or another justice of the county, but when the accused by authority of the warrant is brought before another or substituted justice, then the complaint is to the latter.

With the aid of section 690 of the General Statutes we think such a construction is admissible and reasonable. This section provides that "every justice of the peace may issue process upon any complaint authorized by law, to any proper officer, or by name to any indifferent person, to be served in any part of the state, to apprehend and bring before himself, or any other proper authority, for trial or examination, any person against whom complaint is made for any criminal offense for which he ought to be brought before such authority."

This language is obviously comprehensive enough to include this proceeding. In terms it includes "every justice of the peace " and "any complaint authorized by law," thus referring to other provisions of the statute giving authority. It also includes "any person against whom complaint is made for any criminal offense for which he ought to be brought before such authority."

The offenses referred to are criminal in their nature. Our statutes have always classed them with crimes. In section 695, now under consideration, they are called "offenses," and when the justice of the peace has exhausted his jurisdiction the higher court, to which further control is committed, is "the next session of the Superior Court having *criminal jurisdiction* in said county."

But the claim is made that the general provisions of section 690 cannot be resorted to, because the power to require sureties of the peace is a special jurisdiction given to justices in section 695, and that special jurisdiction cannot be controlled by other provisions of the statute conferring general jurisdiction in criminal cases.

The principle invoked is undoubtedly a sound one, but it only applies where the special provisions pre-occupy and cover the ground in question. If, for instance, section 695 had provided specially for the issuing of a warrant of arrest and for its return before the same justice who issued it, the claim would rest on a good foundation. But these provisions are omitted in the section referred to. There is no provision for issuing any process to bring the accused before any court.

This is a matter therefore left open for the operation of the general provisions of section 690. If the latter does not apply there is a serious defect in the special provisions re- ferred to.

The applicant's counsel in his brief cites the statute of 1821 relative to bastardy proceedings, and the decision in *Hopkins* v. *Plainfield*, 7 Conn., 286, referring to that act, as strongly supporting his construction of the act now under consideration. But, as it impresses us, it weakens rather than strengthens his argument, for it illustrates and fur- nishes additional foundation for the precise distinction we have made. That act provided that when a woman exhib- ited " her complaint on oath to a justice of the peace," " *such* justice should issue a warrant and cause such person to be apprehended and brought before him, and that he should order the person to become bound," etc. This act is erroneously said to be similar to section 695. On the con- trary, by an additional provision it supplies an important omission in that section which we consider a controlling one, that is, it points out in detail the steps to be taken by the justice to whom complaint might be made—that he was to issue his warrant to cause the person accused to be brought before *him* and *he* was to order the person to become bound. The opinion of the court in *Hopkins* v. *Plainfield*, in referring to the effect of this statute, italicizes the words *him* and *he* precisely as we have done above. The court as- sumes that the act, on account of those words, might have the meaning attributed to it, but the decision in fact was based on the ground that the statute applied only to cases where the woman was prosecutrix, and did not apply to a prosecution by the town, as that was. There was a plea in abatement in that case that the process was issued by one justice of the peace and the person charged was directed to be, and in fact was, brought before another justice. But the court held the plea insufficient, and upon a ground hav- ing some analogy to the principles we apply to this case, namely, for the reason that the special provision relative to the issue of process contained in the section relating to a

prosecution by the injured woman, was omitted in another section of the same act providing for prosecutions by the town, and the court saved the case by going *outside the provisions of the special act*, (as we do), and applying a general provision that any justice of the peace had power to bind over the accused to the county court.

We may here remark that the general provision authorizing a justice of the peace to issue a warrant to arrest and bring the accused " before any other competent authority " than himself, does not appear in the revision of the statutes of 1821, nor in any revision after that until 1849. It was evidently inserted in order to have one uniform rule in all cases not otherwise specially provided for.

The practice in this state, we believe, has generally conformed to this construction of the statute. Our most approved books of forms, which have been in constant use for many years by all our magistrates and by the members of the legal profession throughout the state, furnish most satisfactory evidence of the practical construction given to the statute in question. In the new "Niles Civil Officer," 14th ed., p. 251, it is said, that the warrant in this class of cases is " to be in the same form as in other criminal prosecutions," and precisely the same thing is stated in the fourth edition of the same work, p. 198. In 2 Swift's Digest, revised edition, p. 800, the full form is given as follows for the process in question:—" To command you to arrest the body of the said *E. F.* and him forthwith bring before me, the said *A. B.*, justice of the peace for said county, or some proper authority," etc. Counsel for the applicant called attention to the fact that the form of record and judgment is signed " *A. B.*" But this militates nothing against the argument derived from the form of warrant, for the same thing appears in other criminal cases where it is conceded that the case might be tried before " other authority," and it is undoubtedly true that the most common practice is for the officer who arrests one accused of any crime to bring him before the justice who issued the warrant, as he is the first named; but the authority to bring the accused

before any other proper authority is just as ample and is conceded by the form of warrant adopted.

For these reasons we think Justice Bennett had a lawful right to try the complaint in question. This brings us to the consideration of the applicant's second claim, that the evidence before the justice court did not justify binding the accused over to the Superior Court or requiring him to procure sureties of the peace. This claim was made in the answer to the return, which was demurred to and the demurrer sustained. So that we shall have no occasion to consider this question at all unless we hold that the inquiry was legitimate and that the demurrer should have been overruled.

The question therefore which the record presents upon this appeal involves an inquiry as to the true function of a writ of habeas corpus; whether it can operate to bring in review irregularities or mere errors of procedure or questions as to the sufficiency of the evidence in the original case? To us it seems a singular misconception of the true office of such a writ to give it the force of a writ of error, a motion for new trial, or an appeal of the original case.

There is no hint anywhere in our statutes or in our judicial system or practice, to indicate that judges of the Superior Court, Courts of Common Pleas or District Courts, (all of whom may hear writs of habeas corpus,) have any appellate revisory or corrective jurisdiction over the judgments even of inferior magistrates. But should the principle involved in the applicant's claim prevail, not only would the writ of habeas corpus be used to review the whole proceedings in all cases of binding over by magistrates to the Superior Court, but it would seem to have a much wider application. We see no reason why a judge of the smallest district court in the state might not, with equal propriety, review the evidence in any case tried in any court in the state, provided the trial resulted in a commitment to jail, although the imprisonment was pursuant to legal process valid on its face, issued by the highest court for the trial of issues of fact, and which manifestly had jurisdiction of the person and the offense.

The acceptance of such a principle as good law would open a very short but much traveled road, for the practical reversal of all judgments resulting in imprisonment, both as to matters of law and as to matter of fact.   To accept such a doctrine would be to eliminate from our jurisprudence some of its most sacred principles.

TRUMBULL, J., in giving the opinion of the court in *Olmsted* v. *Hoyt*, 4 Day, 442, says :—" The judgment of a court of record having jurisdiction is not void, but stands in force till avoided by reversal, however erroneous it may be, or contrary even to the provisions of a statute.   The same is the rule as to decisions of courts not of record.   The decisions of courts of chancery, and admiralty, of ecclesiastical courts, orders of session, and every judicial act, in matters within their respective jurisdictions, are valid till properly quashed, set aside or reversed."

Where one is committed to jail pursuant to a judgment valid on its face, by a court having jurisdiction, and by virtue of legal process valid on its face, the attack on the judgment under a writ of habeas corpus must necessarily be collateral, and subject to the rules restricting collateral attacks, and if so, the validity and present force of the process are the only proper subjects for investigation under such a writ in such a case.

The applicant cites quite a number of cases in support of propositions stated by him which directly conflict with the positions taken by us in this discussion, but upon a critical examination of the cases referred to we do not think they support his contention in this case.   There is indeed very little disparity in the principles adopted by the courts of different states as applicable to such a case as this, and the differences which really exist are manifestly occasioned by statutes and peculiarities of local practice.

The applicant cited *Stepen's Case*, 1 Wheeler's Crim. Cases, 323, as holding that the evidence before the committing magistrate should always be inquired into for the purpose of ascertaining if the party was illegally deprived of his liberty, but upon referring to the case we find that it

arose under the fugitive slave law, and the laws of the United States had an important bearing upon it, and we find that the real point decided, as stated in the head note, was simply that " the return on a writ of habeas corpus that *J. S.* is held as a slave, is not conclusive, and inquiry may be made into the fact upon the return whether he is a slave or not."

The case of *Ex parte Jenkins*, 2 Wallace Jr., 521, was where a deputy marshal of the United States had been arrested and put in jail under state process for his act in executing a writ issued under the fugitive slave law. A special act of Congress conferred upon the United States judges power to grant writs of habeas corpus in all cases where prisoners were in jail for any act done in pursuance of a law of the United States, and the proceeding was controlled by that law.

The case of *People* v. *Tompkins*, 1 Parker C. R., 224, from which Judge EDMOND's opinion is cited as holding that the courts under a writ of habeas corpus had most ample power to inquire into the guilt or innocence of the prisoner, shows clearly that the statute of New York controlled the decision. The opinion states that " a distinction is made ; so far as judgments, decrees and convictions are concerned, they cannot be inquired into collaterally on habeas corpus, but as to writs, warrants, or other process before final judgment, it is different." Section 38 of the statutes then in force expressly requires the court to inquire into the facts stated in the return and into the cause of the confinement, and section 43 states expressly that " if the party committed appear by the testimony offered with the return or upon the hearing thereof to be guilty he shall be remanded," etc. Section 48 is also cited as containing further regulations for hearing the evidence on both sides.

In *Squires's Case*, 12 Abb. Pr. 38, the applicant under arrest was one of the metropolitan police, and the question was whether he came under the special statute which prohibited his arrest while on duty as such officer. In *People* v. *Richardson*, 18 How. Pr., 92, the case was controlled by statute, but it was held that inquiry into the facts could not

be made after indictment. In *People* v. *Stanley*, 18 How. Pr., 179, there was a writ of habeas corpus in conjunction with a writ of certiorari, and the case was determined upon the testimony before the committing magistrate. But the reporter makes a note of the fact that in making an inquiry into the evidence after indictment, the decision was contrary to previous decisions of the same court.

In *Ex parte Harfourd*, 16 Florida, 283, the opinion of the court as given on page 287 states explicitly that the statutes of that state relating to habeas corpus give ample power to examine into the cause of the imprisonment and to discharge, admit to bail or remand to custody "as the law and the *evidence* shall require." The case was a commitment for want of bail for an act that was held not criminal. The cases of *Commonwealth* v. *Rutherford*, 5 Randolph, 646, *Lumm* v. *The State*, 3 Porter (Ind.), 293, and *Street* v. *The State*, 43 Miss., 1, were all applications to be admitted to bail where the statutes or constitutions of the several states controlled the issue, and furnish no analogy to the case on trial.

In this state under our constitution there might be an issue of fact in case the writ of habeas corpus should be based upon a refusal to admit a party to bail, in order to determine whether " the proof is evident or the presumption great; " and even the case on trial discloses the fact that the parties were heard upon the question whether the bail required by the justice was excessive, and the judge decided that it was excessive and reduced the amount required.

In *Bennett's Case*, 2 Cranch C. C., 612, and in 3 Cranch S. C., 447, the discussion had reference to the rules of procedure where the writ of habeas corpus was conjoined with certiorari.

The applicant also refers to several cases in a general way, without attempting any statement of the point decided. These cases also upon examination it will be found can be disposed of in a similar manner. In *Cowell* v. *Patterson*, 49 Iowa, 514, the statute of that state is cited, to the effect that upon the trial of habeas corpus the testimony taken before the magistrate may be given in evidence in connection with

any other testimony that may be produced. In *Jones* v. *Darnall*, 103 Ind., 569, the writ was brought by a father to obtain the custody of his infant child, which of course called for evidence to show what the welfare of the child required, and has no analogy to the case on trial. *Ex parte Mohr*, 73 Ala., 503, was the case of the extradition of a fugitive from justice, which was principally regulated by statutes of the state and of the United States. But it was there held that parol evidence was admissible only on the question whether the person arrested was in fact a fugitive from the demanding state. *In re Snell*, 31 Minn., 110, was a case where a writ of certiorari was issued as ancillary to habeas corpus, to bring up the testimony that had been received before the justice. And so we might go through the entire list, but we forbear.

The statutes of our own state cannot be successfully appealed to in support of the applicant's contention in the present case. It is true that the common law rule of evidence has been modified by the provision contained in section 1271, of the General Statutes, that " when any statements contained in such return shall be contested, such court or judge may hear testimony, and examine and decide. upon the truth as well as the sufficiency of the return," etc. The pleadings here show that there was no attempt to contest any statements contained in the return, but the applicant in his reply to the return set up the facts relied upon, to which reply there was a demurrer, which the court sustained.

The applicant also cites Church on Habeas Corpus, p. 296, where the author, after referring to two different rules that have obtained in different jurisdictions, expresses a strong preference for that which gives appellate powers to the judge or court upon the trial of. a writ of habeas corpus. We understand him to concede, although it is somewhat obscurely done, that the rule he advocates is of statutory origin. But if we are to understand it as an assertion of what the law is, or what the courts ought to declare it to be, independent of statutes, then we place in the opposing

scale the views of such criminal text writers as Cooley, Freeman, Hurd, Bouvier and Bishop.

Judge COOLEY, in his treatise on Constitutional Limitations, 4th ed., p. 430, says:—"In the great anxiety on the part of our legislators to make the most ample provision for speedy relief from unlawful confinement, authority to issue the writ of habeas corpus has been conferred upon inferior judicial officers, who make use of it sometimes as if it were a writ of error, under which they might correct the errors and irregularities of other judges and courts, whatever their relative jurisdiction and dignity. Any such employment of the writ is an abuse. Where a party who is in confinement under judicial process is brought up on habeas corpus, the court or judge before whom he is returned will inquire— 1. Whether the court or officer issuing the process under which he is detained, had jurisdiction of the case, and has acted within that jurisdiction in issuing such process. If so, mere irregularities or errors of judgment in the exercise of that jurisdiction must be disregarded on this writ, and must be corrected either by the court issuing the process or on regular appellate proceedings. 2. If the process is not void for want of jurisdiction, the further inquiry will be made, whether, by law, the case is bailable, and if so, bail will be taken if the party offers it; otherwise he will be remanded to the proper custody." In Hurd on Habeas Corpus, 2d ed., p. 327, it is said:—"The habeas corpus, as before intimated, cannot have the force and effect of a writ of error or certiorari; nor is it designed as a substitute for either. It does not, like them, deal with errors or irregularities which render a proceeding voidable only; but with those radical defects which render it absolutely void." The same doctrine is laid down in Freeman on Judgments, §§ 619 and 622; 1 Bishop Crim. Proced., § 1410; 1 Bouvier's Law Dict., tit. *Habeas Corpus*, § 14.

We will conclude our already too protracted discussion by saying that a careful review of the decided cases upon this subject has fully convinced us that there is a very great preponderance of judicial authority in favor of the proposi-

tion that a writ of habeas corpus cannot be made the vehicle of determining mere errors and irregularities of procedure, where the court had jurisdiction and the sentence did not transcend the authority of law and where the commitment was in due form. *Ex parte Parks*, 9 U. S. R., 18, 23; *Wight's case*, 134 id., 148; *State* v. *Towle*, 42 N. Hamp., 540; *Ex parte Kellogg*, 6 Verm., 509; *In re Greenough*, 31 id., 279; *O'Malia* v. *Wentworth*, 65 Maine, 129, 132; *Ross's case*, 2 Pick., 165, 171; *Adams* v. *Vose*, 1 Gray, 51; *Fleming* v. *Clark*, 12 Allen, 191; *People* v. *Liscomb*, 60 N. York, 559, 574; *Petition of Crandall*, 34 Wis., 177; *Ex parte Gibson*, 31 Cal., 619; *Ex parte McCullough*, 35 id., 97; *Ex parte Mirande*, 73 id., 365; *Ex parte Shaw*, 7 Ohio St., 81; *Ex parte Van Hagan*, 25 id., 426; *Perry* v. *The State*, 41 Texas, 488; *Pitner* v. *The State*, 44 id., 578; *Matter of Eaton*, 27 Mich., 1; *Matter of Underwood*, 30 id., 502; *Commonwealth* v. *Lecky*, 1 Watts, 66, 68; *Ex parte Winston*, 9 Nevada, 71; *Ex parte Edwards*, 11 Florida, 184; *Emanuel* v. *The State*, 36 Miss., 627; *State* v. *Fenderson*, 28 Louis. An., 82; *Ex parte Parks*, 1 Hughes, 604; *Bethell's case*, 1 Salk., 348; *In re Newton*, 16 Com. Bench, 97.

There was no error in the judgment complained of.

In this opinion the other judges concurred.