[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
According to the testimony of the petitioner, on the evening of October 12, 1984, he met the victim, Cynthia Lamar, at a bar in Bridgeport. [Tr. 5, 6].[1] Mr. Summerville and Lamar were acquaintances and had dated each other on occasion when they were in high school. [Tr. 6].
Somewhere around 11:00 p. m., the couple left the bar and went to Stamford. [Tr. 8]. Summerville drove and Lamar directed him to the Crown Plaza Hotel. [Tr. 9]. While Mr. Summerville parked the car, Ms. Lamar registered them into Room 953 of the hotel with money Mr. Summerville had given her earlier in the evening. [Tr. 9-12, 35]. Thereafter, Mr. Summerville joined Ms. Lamar.
During the remainder of the evening, the couple lounged in the hotel room, watched television, drank cognac, and snorted approximately one gram of cocaine. [Murray, Tr. 53; Tr. 11, 12]. Lamar was in good spirits. [Tr. 10]. At about 4:45 a.m. a guest in a nearby room heard "grunting", "heavy breathing" and a woman's voice saying "stop". [Aiello, Tr. 45, 46].
Sometime around 5:00 a.m., as the couple was preparing for bed, Ms. Lamar indicated to Mr. Summerville that she needed to use the bathroom. [Tr. 13]. As she put one foot on the floor [Tr. 49] she began to shake fell to the floor, and began "gagging for air like she was choking." [Tr. 15, CT Page 2750 50]. Summerville tried grabbing her tongue [Tr. 16] and while attempting to pry open her mouth she bit him and caused injuries to his hands. [Braccia, Tr. 8; Burkes, Tr. 17, 18, 19; Tr. 17, 18, 25]. Summerville tried calling the front desk for help but no one responded. [Tr. 20]. He ran into the hallway, knocked on doors but had no response. [Tr. 19]. He returned to the room and wrapped Lamar in a cover from the bed. [Tr. 19]. Then, he entered the hallway again and met a security guard who came into the room, examined the victim and radioed for assistance. [Tr. 20, 21; Osorio, Tr. 20-22]. Summerville told the guard about the seizure. [Osorio, Tr. 32].
When the paramedics arrived, they found no pulse on Lamar. [Shea, Tr. 65]. They detected no breathing. [Shea, Tr. 66]. They attempted resuscitation with an air bag, then CPR and immediately transported her to Stamford Hospital where she was pronounced dead. [Shea, Tr. 67-69].
While the paramedics worked on Lamar at the hotel room, Summerville waited in the hallway. [Tr. 22] After Lamar was removed from the room, Summerville was taken to the police station where he gave a statement. [Tr. 24]. After he was at the police station for about three hours, his hands were hurting and swelling. [Tr. 25]. He was taken to the hospital in Starnford where he was admitted. [Tr. 25].
On October 22, 1984, the Petitioner, was arrested and charged in separate informations with the crimes of murder (C.G.S. Sec. 53a-54a) and possession of cocaine (C.G.S. Sec.21a-277 (a)).
Dr. Arkady Katsnelson, Associate Medical Examiner for the Office of the Chief Medical Examiner of the State of Connecticut determined Ms. Lamer died as a result of being manually strangled. Ms. Lamar did have a toxic level of cocaine in her blood at the time of death, 2.63 milligrams per liter. Dr. Elliot Gross, Chief Medical Examiner for the City of New York who had been first Chief Medical Examiner of Connecticut from 1970 until 1979, testified for the defense. He concluded that Ms. Lamar died as a result of cocaine intoxication. Dr. William Sturner, Chief Medical Examiner for Rhode Island, called as a rebuttal witness by the prosecution, concurred with Dr. Katsnelson's opinion that the victim had been strangled. Dr. Sturner had tissue slides of certain organs of the deceased prepared, the purpose of which was to enable him to determine whether specific hemorrhages occurred before death or after death. These slides were not reviewed by either Dr. Katsnelson or Dr. Gross. Although the CT Page 2751 defense was offered a continuance so that his expert might review Dr. Sturner's findings and conclusion, trial counsel declined the offer.
In October 1985, following a consolidated jury trial in the Superior Court for the Judicial District of Stamford/Norwalk, at Stamford. Summerville was convicted of manslaughter in the first degree (C.G.S. Sec. 53a-55 (a)(l)), Docket No. 1228; and possession of narcotics (C.G.S. Sec. 212-227(a)), Docket No. 1229.
On December 5, 1985, Petitioner was sentenced to a term of twenty (20) years incarceration for the conviction of first degree manslaughter and to a concurrent sentence of three (3) years incarceration for the conviction of possession of narcotics, for a total effective sentence of twenty (20) years incarceration.
On July 5, 1988, the Appellate Court issued its decision of No Error in State v. Summerville, 13 Conn. App. 175
(1988).[2]
The Petitioner, Robert Summerville, has applied to this Court for a Writ of Habeas Corpus claiming that his conviction of manslaughter in the first degree, and his resultant incarceration, are illegal since said conviction was obtained in violation of his right to due process, guaranteed under the 14th Amendment to the United States Constitution and Article I, Section 8 of the Connecticut Constitution; and in violation of his right to the effective assistance of counsel, guaranteed under the 6th and14th Amendments to the United States Constitution. (The Petitioner advances no claim against his conviction for possession of narcotics.)
The petitioner did not deliberately bypass the orderly process of direct appeal inasmuch as his claims raised by Third Amended Petition dated January 31, 1991 lie outside the trial record.
As stated quite succinctly by the trial judge, "I think the heart of the case is the medical testimony of both sides . . ." [Sturner, Tr. 43]. It is the medical evidence, or claimed lack thereof, that constitutes the basis of the petitioner's claims. Summarizing Mr. Summerville's claims, they are that the medical evidence of manual strangulation was unreliable and that his trial counsel rendered ineffective assistance by not availing himself of an offered continuance to have his expert attempt to rebut the testimony of Dr. Sturner. CT Page 2752
During the course of a three-day hearing on the petition for habeas corpus, the petitioner presented the testimony of Dr. Mark Taff, a forensic pathologist, who testified that upon review of Mr. Summerville's case, he concluded that the victim died as a result of a cocaine overdose.[3] In addition to Dr. Gross, that the fracture occurred during the autopsy to Dr. Taff, the petitioner offered the testimony of Attorney Richard Brown who concluded that trial counsel's performance fell below the Connecticut standards of "effective" and "competent" because he failed to request a continuance of the trial so a defense expert could review the slides prepared for Dr. Sturner and review Dr. Sturner's findings based thereon.
Paragraph 12 of the Petition states, "The presentation of medical evidence to the jury, which was unreliable as indicia of manual strangulation, deprived the petitioner of his rights to due process under the 14th Amendment to the United States Constitution, and/or Article I, Section 8, of the Connecticut Constitution." The petitioner urges the court to conclude that the evidence was unreliable and, as a result, the petitioner was denied a fair trial.
It is not for a habeas court to "retry a question of fact or inquire into the sufficiency of the evidence to warrant a conviction of the person imprisoned, for even if insufficient, it is error merely and not a ground for discharge in habeas corpus proceedings." Ryan v. Warden,4 Conn. Sup. 215, 216 (1936). If this Court chose to accept in toto the testimony of Dr. Taff it would usurp the trier's function.
As it unfolded, the trial of Mr. Summerville could best be summarized as a battle of the experts. It was for the jury to accept or reject, in whole or in part, any doctor's testimony. The defense hired a prominent forensic pathologist, Dr. Elliot Gross. Dr. Gross's opinion that the victim's demise resulted from a cocaine overdose was rejected by the trier. Dr. Taff's conclusions do not constitute new evidence. His findings are based upon the same evidence that was available at the time of trial. The Court must reject the contention that the petitioner's trial was fundamentally unfair because the verdict of guilt was based upon unreliable evidence.
The limitations upon the power of the court or a judge on habeas corpus to review irregularities of errors of procedure or questions as to the sufficiency of evidence in the original case where CT Page 2753 a judgment is valid upon its face, are well settled in this State. We quote from the opinion of JUDGE LOOMIS in In re Bion, 59 Conn. 372, 386,20 A. 662: "To us it seems a singular misconception of the true function of such a writ to give it the force of a writ of error, a motion for a new trial, or an appeal of the original case. . . The acceptance of such a principle as good law would open a very short but much traveled road, for the practical reversal of all judgments resulting in imprisonment, both as to matters of law and as to matter of fact. To accept such a doctrine would be to eliminate from our jurisprudence some of its most sacred principle. . . Where one is committed to jail pursuant to a judgment valid on its face, by a court having jurisdiction, and by virtue of legal process valid on its face, the attack on the judgment under a writ of habeas corpus must necessarily be collateral, and subject to the rule restricting collateral attacks, and if so, the validity and present force of the process are the only proper subjects for investigation under such a writ in such a case." See also Amato v. Erskine,100 Conn. 497, 503, 123 A. 836; Ex parte Columbia George, 144 F. 985, 986; Ex parte Terry, 128 U.S. 289,292, 9 Sup. Ct. 77; Frank v. Mangum, 237 U.S. 309, 35 Sup. Ct. 582,590; 12 R.C.L. 1240, 1241.
The Superior Court is one tribunal over the whole State. Allis v. Hall, 76 Conn. 322, 327,56 A. 637; Mower v. State Department of Health,108 Conn. 74, 77, 142 A. 473. It is a court of general jurisdiction. Ansonia v. Studley, 67 Conn. 170,177, 34 A. 1030; State ex rel. Morris v. Bulkeley, 61 Conn. 287, 374, 23 A. 186. As such, it had the power to try the person charged with the particular offense set forth in the information and had power to inquire into and determine whether the offense had been committed. . . This is an attempt to retry, on habeas corpus, a question of fact already decided by the jury, and conclusively established by the judgment of the court as set forth in the judgment-file. If the petitioner had desired to test the sufficiency of the evidence produced at the trial to support the finding of the jury, his remedy was by an appeal from the denial of the motion to set aside the verdict. Not having sought to review this question in the manner provided by law, it is not now open to him to attack it collaterally, and to seek to retry it upon a habeas CT Page 2754 corpus.
Perell v. Warden, 113 Conn. 339, 342-344 (1931). See also McClain v. Manson, 183 Conn. 418, 433 (1981); Vena v. Warden,154 Conn. 363, 365 (1966). The second claim asserted is that Summerville was denied the adequate end effective assistance of counsel guaranteed by both the state and federal constitutions. More specifically, petitioner alleges that his trial attorney should have had a defense expert review the slides relied upon by Sturner; that he had an opportunity to be granted a continuance for that purpose and that he failed to avail himself of same. At the habeas corpus hearing, counsel gave these reasons for declining the offer of a continuance for the purpose of having his expert medical witness examine the slides: (a) the testimony being offered by Sturner was not proper rebuttal evidence; (b) the evidence should not have been allowed because counsel had not been given a copy of Sturner's report in advance of trial nor had he been informed that no such report was available prior to trial; (c) the jury was already upset by the fact that the trial had been delayed because of Dr. Gross's unavailability; (d) the testimony previously offered through Dr. Gross was both strong and favorable for the defendant; and (e) counsel could not be certain what Dr. Gross might say upon an examination of the slides.
Attorney Richard Brown who testified on behalf of the petitioner stated that, in his opinion, trial counsel's failure to have the slides examined constituted ineffective assistance.[4] Trial counsel made a judgment call. He weighed in his mind the pros and cons of seeking a continuance to have Dr. Gross review the slides. The petitioner has not demonstrated by a preponderance of the evidence that counsel's performance in this regard was not reasonably competent or that it was not within the range of ordinary training and skill in the criminal law. Beyond that, the petitioner did not sustain his burden of proof that even if his lawyer's assistance was less than effective or competent, that the failure to have Dr. Gross or some other expert review the slides and Sturner's conclusions contributed to the conviction. See State v. Talton,197 Conn. 280, 297 (1985).
For the foregoing reasons, the Petition is dismissed.
SCHEINBLUM