STATE OF CONNECTICUT *v.* DWAIN CHARLTON
(11028)

DUPONT, C. J., LAVERY and LANDAU, Js.

Argued November 2, 1992—decision released February 23, 1993

*Francis T. Mandanici,* assistant public defender, for the appellant (defendant).

*James A. Killen,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *David P. Gold,* supervisory assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a trial to the jury, of assault in the first degree in violation of General Statutes § 53a-59 (a) (3).[1] The defendant claims that the

[1] General Statutes § 53a-59 (a) provides in pertinent part: "A person is guilty of assault in the first degree when . . . (3) under circumstances

trial court improperly (1) denied his motions for a speedy trial, (2) limited his questioning of venirepersons during voir dire, (3) denied the defendant's request for a specific instruction concerning the effect of alcohol and marihuana on a witness' credibility, and (4) prohibited him from arguing, in his closing argument, that the jury could draw an adverse inference from the state's failure to call an eyewitness to the crime. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On the morning of June 24, 1990, the victim was attending a party at a friend's house. The victim was accompanied by two friends, Tanya Phillips and Byron Campbell. Shortly before 4:30 a.m., the victim went to the bar to ask someone for a light for his marihuana cigarette. One of the persons he asked was the defendant's girl friend, Catherine Hammie. He eventually obtained a light from a person named Kunta and returned to talk with his friends. The defendant went over to Hammie and asked her what the victim wanted. Hammie told the defendant that the victim had asked her for a light and to dance, but she refused. The defendant then bumped the victim, and an argument ensued. The defendant pulled out a handgun, but was restrained by Kunta. The defendant, however, got his hand free, raised the gun and shot the victim in the face. The defendant and Hammie then left the party. The bullet lodged against the victim's spine, breaking his neck.

I

The defendant's first claim is that the trial court improperly denied his motion for a speedy trial. We disagree.

---

evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

The following additional facts are necessary to the resolution of this claim. The defendant was arrested on November 6, 1990. On November 21, 1990, the defendant filed seven pretrial motions, which were ruled on on November 29, 1990. On December 4, 1990, the defendant filed a motion for reduction of bond, which was denied on December 12, 1990. On January 8, 1991, the defendant filed another motion for reduction of bond, which was denied on January 23, 1991. On January 25, 1991, the defendant filed nine pro se motions.[2] These motions were scheduled for hearing on February 13, 1991, but were not heard because the defendant was not present. On February 20, 1991, the defendant withdrew these motions, but the withdrawal did not appear on the docket sheet. The defendant, on May 8, 1991, requested that these pro se motions be marked off. On May 21, 1991, the defendant filed three additional motions. These were a motion to suppress, a motion for reduction of bond, and his first motion for a speedy trial. On May 29, 1991, the motion to suppress was marked off and the motions for reduction of bond and a speedy trial were denied. On July 12, 1991, the defendant filed a motion to dismiss counsel, and a second motion for a speedy trial. On July 24, 1991, the motion to dismiss counsel was denied and the motion for a speedy trial was granted. Later that day, however, the court reconsidered the speedy trial motion and then denied it. The court reversed itself because it had not taken into account substantial excludable time due to the withdrawal of the January 25, 1991 pro se motions that were not indicated on the docket sheet. The defendant filed additional motions to dismiss counsel and for a speedy trial, which were denied on

---

[2] These motions included motions (1) to suppress evidence, (2) for advance notice and access regarding testing, (3) to produce photographs, (4) for disclosure of uncharged misconduct, (5) to dismiss, (6) to limit impeachment of the defendant, (7) for copy of information, (8) for bill of particulars, and (9) to suppress identifications.

August 7, 1991. On October 10, 1991, the defendant filed another motion for reduction of bond. On October 21, 1991, the defendant again filed a motion for a speedy trial. There is nothing in the record to indicate that the trial court ruled on the motions filed on October 10 and October 21. Jury selection began on October 31, 1991, and evidence was first heard on November 6, 1991, exactly one year from the date of the defendant's arrest.

The right to a speedy trial is guaranteed by the sixth amendment to the United States constitution, made applicable to the states through the fourteenth amendment. *State* v. *Almgren,* 12 Conn. App. 364, 368, 530 A.2d 1089 (1987). This right is also guaranteed in article first, § 8, of the Connecticut constitution. Id. The time limitations that govern this right are found in Practice Book § 956B.[3] The defendant was arrested on November 6, 1990, and the information was filed on November 8, 1990. Therefore, the date on which calculation begins is November 9, 1990; *Lamberti* v. *Stamford,* 131 Conn. 396, 397–98, 40 A.2d 190 (1944); and the earliest possible date for the filing of the motion to dismiss for lack of a speedy trial, without taking into consideration the excludable time periods, is July 8, 1991. Id. The periods of time that are excludable from this calculation are found in Practice Book § 956C.[4]

---

[3] Practice Book § 956B (b) provides in pertinent part: "The trial of such defendant shall commence within eight months from the filing of the information or from the date of the arrest, whichever is later, if the following conditions are met:

"(1) the defendant has been continuously incarcerated in a correctional institution of this state pending trial for such offense; and

"(2) the defendant is not subject to the provisions of Gen. Stat. § 54-82c. . . ."

[4] Practice Book § 956C provides in pertinent part: "The following periods of time shall be excluded in computing the time within which the trial of a defendant charged by information with a criminal offense must commence pursuant to Sec. 956B:

"(a) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to . . .

"(4) delay resulting from the hearing on any pretrial motion . . . ."

The defendant argues that only the days on which the actual hearings take place are excluded under this section. Our cases clearly demonstrate otherwise. In *State* v. *Ortiz,* 14 Conn. App. 493, 499, 542 A.2d 734 (1988), we unequivocally held that "there is nothing in the rules that limits delays resulting from a hearing to the hearing time itself." The computation period will begin on the day following the filing of the motion; see *Lamberti* v. *Stamford,* supra; and will run until and including the day the motion is heard.

The defendant further argues that the time delays resulting from the defendant's "garden-variety," pro se motions are not excluded. This argument is equally unavailing. "The rules of statutory construction apply with equal force to Practice Book rules. . . . A basic tenet of statutory construction is that when a statute [or rule of practice] is clear and unambiguous, there is no room for construction." (Internal quotation marks omitted.) *Infante* v. *Porath,* 29 Conn. App. 465, 467, 615 A.2d 1073 (1992). The words contained in § 956C (a) (4) are clear and unambiguous. It states that the "delay resulting from the hearing on *any* pretrial motion" is excluded.[5] (Emphasis added.) Therefore, we include the pro se motions in the calculation of excludable time.

As noted earlier, without considering the excludable time, the earliest that the defendant could have filed a motion to dismiss for lack of a speedy trial is July 8, 1991. We calculate the excludable time to arrive at the actual date when a motion to dismiss would be timely as follows: The defendant's motions filed November 21, 1990, and acted on November 29, 1990—eight days; the defendant's motions filed December 4, 1990, and acted on December 12, 1990—eight days; the defendant's

---

[5] We are not unaware of cases in which our Supreme Court has held that the word "any" has a diversity of meanings. Cf. *Muller* v. *Town Plan & Zoning Commission,* 145 Conn. 325, 142 A.2d 524 (1958).

motions filed January 8, 1991, and acted on January 23, 1991—fifteen days; the defendant's pro se motions filed January 25, 1991, and withdrawn February 20, 1991—twenty-six days;[6] the defendant's pro se motions filed May 21, 1991, and either withdrawn or acted on May 29, 1991—eight days; the defendant's pro se motions filed July 12, 1991, and acted on July 24, 1991—twelve days; and the defendant's pro se motions filed July 29, 1991, and acted on August 7, 1991—nine days. Therefore, the total excludable time amounts to eighty-six days. Adding this time to the July 8, 1991 date brings us to October 2, 1991, which is the earliest day on which a motion to dismiss would be timely. Therefore, the trial court properly denied the defendant's speedy trial motions of May 21, 1991, July 12, 1991, and July 29, 1991. The defendant's motion for a speedy trial filed on October 21, 1991, was timely. Jury selection in this case began on October 31, 1991, and evidence was heard beginning on November 6, 1991. Therefore, the trial was commenced within the thirty days required under § 956D.[7] The defendant's claims, therefore, are without merit.

## II

The defendant next claims that the trial court improperly limited his questioning of potential jurors on voir dire. We do not agree.

---

[6] The docket sheet does not indicate that these motions were actually withdrawn. The docket sheet does indicate that these motions were marked off on May 8, 1991. Regardless, for the computation of the excludable time in this case, we will use the shorter time period.

[7] Practice Book § 956D provides: "If the defendant is not brought to trial within the applicable time limit set forth in Secs. 956B and 956C, and a trial is not commenced within thirty days of the filing of a motion for speedy trial by the defendant at any time after such time limit has passed, the information shall be dismissed with prejudice on motion of the defendant filed after the expiration of such thirty day period. Failure of the defendant to file a motion to dismiss prior to the commencement of trial shall constitute a waiver of the right to dismissal under these rules."

Before voir dire, the defendant proposed that he be allowed to ask potential jurors "whether they are more inclined to find someone guilty as compared to not guilty." The trial court stated that: "No, that could not, given the amount of information that they have, would not present any type of information. . . . My ruling is based on the fact that you could not intelligently ask that question in a vacuum." The defendant properly excepted.

"The right to a voir dire examination of each prospective juror in a criminal action is provided by § 54-82f of the General Statutes. This right was established as a constitutional one in 1972 by including in article IV of the amendments to the state constitution the provision that '[t]he right to question each juror individually by counsel shall be inviolate.' " *State* v. *Smith*, 222 Conn. 1, 6, 608 A.2d 63, cert. denied,     U.S.     , 113 S. Ct. 383, 121 L. Ed. 2d 293 (1992). The trial court is vested with broad discretion to determine the extent and form of the voir dire examination. Id.; *State* v. *Hernandez*, 204 Conn. 377, 381, 528 A.2d 794 (1987). "The exercise of the court's discretion, however, must be tempered to comport with the goals of the voir dire examination. We have recognized that the purpose of examining members of the venire is twofold: first, to provide information upon which the trial court may decide which prospective jurors, if any, should be excused for cause; and second, to provide information to counsel which may aid them in the exercise of their right to peremptory challenge. . . . '[T]he court should grant such latitude as is reasonably necessary to fairly accomplish the purposes of the voir dire. Clearly, therefore, if there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision of the case, the party who may be adversely affected should be permitted questions designed to uncover that prejudice. This is par-

ticularly true with reference to the defendant in a criminal case.' " (Citations omitted.) *State* v. *Dolphin,* 203 Conn. 506, 512, 525 A.2d 509 (1987). We will not disturb a trial court's ruling unless the court has clearly abused its discretion such that prejudice to one of the parties has resulted. *State* v. *Smith,* supra, 6–7; *State* v. *Dahlgren,* 200 Conn. 586, 601, 512 A.2d 906 (1986).

Contrary to the defendant's claim, this case is very similar to *Smith.* In *Smith,* the defendant attempted to ask the same question of jurors and the trial court did not allow it. In that case, however, the trial court suggested ways in which the defendant could rephrase the question that would make it unobjectionable. The defendant here seems to suggest that the trial court's failure to suggest ways to rephrase the question prevented him from a meaningful opportunity to inquire into a prospective juror's predisposition to convict. We cannot impose on a trial court the burden of suggesting to parties how they should conduct their cases. Furthermore, the record does not support the defendant's claim that he did not have a meaningful opportunity to delve into the predispositions of jurors.[8] "[I]n determining whether members of the venire were predisposed to convict his client, defense counsel [had an opportunity to consider] the answers he had received to questions about the presumption of innocence and the state's burden of proof beyond a reasonable doubt, which the court did not restrict in any way." *State* v. *Smith,* supra, 9 n.7. Indeed, the defendant inquired as to the possible predispositions of the jurors in great

---

[8] The record contains only the questioning of the first three venirepersons. It is the defendant's burden to ensure that an adequate record exists for appellate review. *State* v. *Hoeplinger,* 27 Conn. App. 643, 609 A.2d 1015, cert. denied, 223 Conn. 912, 612 A.2d 59 (1992). The limited record that does exist regarding the voir dire shows that the defendant had a meaningful opportunity to question jurors about a possible predisposition to convict.

detail and had sufficient information to aid him in the exercise of his right of peremptory challenge. Therefore, the defendant's claim is meritless.

### III

The defendant next claims that the trial court improperly denied his request for a specific instruction concerning the effect of alcohol and marihuana on a witness' credibility. We disagree.

In this case, the defendant argues generally that "where there is evidentiary support for specific instructions regarding credibility factors, the court is obligated upon proper request to include those factors in its instructions." *State* v. *Mancinone,* 15 Conn. App. 251, 280, 545 A.2d 1131, cert. denied, 209 Conn. 818, 551 A.2d 757 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989). As we held in *Mancinone,* we disagree with that premise. "Whether jury instructions on credibility should specifically address any of the factors urged here by the defendant is a determination best left to the discretion of the trial court, and the refusal to give such an instruction is erroneous only if, under all the circumstances of the case, it was an abuse of discretion."[9] Id. We find no abuse of discretion. We have reviewed the court's charge on the credibility of witnesses and, considering the instruc-

[9] The record indicates that the trial court accorded the defendant great latitude in this area. On the day of the jury instruction, the court allowed the defendant to reopen his case to present evidence of the effects of marihuana and alcohol. The court stated to the jury that it was "going to allow at the defendant's request their case to be reopened and one exhibit to be introduced. . . . It's defendant's Exhibit Number 1, it's the Diagnostic and Statistical Manual of Mental Disorders. There is no mental disorder claimed here, but a portion of that learned text, and the DSM-III-R is recognized as a learned text, it's used by doctors who deal with the effect of alcohol on a person and also the effect of marihuana on a person. It's probably within your common knowledge, but Mr. Mandanici has asked me to allow this to be presented as an exhibit so that he could argue from this what he feels the marihuana and alcohol, what role they played in this case. So,

tion in its entirety, "without critical dissection, and from the standpoint of whether it gave adequate guidance to the jury in reaching a proper verdict . . . we conclude that the instruction sufficiently covered the issue of credibility of witnesses, and that the failure of the trial court to address specifically [the effect of marihuana and alcohol on the credibility of witnesses] was not an abuse of discretion."[10] (Citation omitted.) Id., 282.

## IV

The defendant's final claim is that the court improperly prohibited him from presenting a closing argument

you could attach whatever weight you want to this, it's offered solely for the purpose of explaining to you something you already know, the effect of marihuana and the effect of alcohol on a person. He is going to argue from that. The weight you give this, the importance you give this is completely and totally up to you."

[10] The court charged as follows: "You heard the lawyers talk a lot about the credibility of witnesses. Let me say this about that subject. In deciding what the facts are, you must consider all the evidence in doing this. You must decide which testimony to believe, and which testimony not to believe. You may disbelieve all or any part of any witness' testimony. In making that decision, you may take into account a number of factors including the following, and I'll give you a list of six factors that bear on the credibility:

"One, was the witness able to see or hear or know the things about which that witness testified?

"Two, how well was the witness able to recall and describe those things?

"Three, what was the witness' manner while testifying? .

"Four, did the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case?

"Five, how reasonable was the witness' testimony considered in light of all the evidence in the case?

"Six, was the witness' testimony contradicted by what that witness has said or done at another time or by the testimony of other witnesses or by other evidence. If you should think that a witness has deliberately testified falsely in some respects, you should carefully consider whether you should rely upon any of that witness' testimony.

"In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider, therefore, whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or only with a small detail. These are some of the factors you may consider in deciding whether to believe testimony."

that drew attention to the fact that the state failed to call an eyewitness to the crime.[11] We do not agree.

The missing witness rule was stated in *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960). That rule provides that "[t]he failure of a party to produce a witness who is in his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause." Id., 675. Two requirements must be fulfilled before a party is entitled to a *Secondino* charge: the witness must be available, and he must be a witness whom the party would naturally produce. Id.; see *State* v. *Anderson*, 212 Conn. 31, 41, 561 A.2d 897 (1989). "To take advantage of this rule permitting an adverse inference, the party claiming the benefit must show that he is entitled to it. . . . When a witness is equally available to both parties no inference unfavorable to either party may be drawn." *State* v. *Rosa*, 170 Conn. 417, 431, 365 A.2d 1135, cert. denied, 429 U.S. 845, 97 S. Ct. 126, 50 L. Ed. 2d 116 (1976).

In *State* v. *Rosa*, supra, our Supreme Court held that where the defendant could not show that he is entitled to benefit of the rule, he is not entitled to the requested charge *or* "an opportunity to argue to the jury that an unfavorable inference may be drawn from the failure of the state to produce [the] witness." Id.

In this case, the defendant did not request a *Secondino* instruction from the trial court. Indeed, the defendant conceded that he "probably didn't meet the standard for a [*Secondino*] instruction." Nevertheless, the defendant argues that he should be allowed to argue a "watered-down" version in his closing argument. This argument has no merit. The standards of the *Secondino* charge are clear. Unless the party fulfills the

---

[11] This is the so-called *Secondino* or "missing witness" inference.

requirements of a *Secondino* charge; see *State* v. *Anderson,* supra; he will not be allowed to argue it to the jury in any form, full or "watered-down."

The judgment is affirmed.

In this opinion the other judges concurred.