STATE OF CONNECTICUT *v.* KENYA OMARI BROWN
(13431)

Dupont, C. J., and Lavery and Spear, Js.

Argued October 25, 1995—decision released March 5, 1996

*Robert Sullivan,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John C. Smriga,* assistant state's attorney, for the appellee (state).

SPEAR, J. The defendant was convicted, after a jury trial, of attempted assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1). On appeal, the defendant claims that the trial court improperly (1) deprived him of his statutory and constitutional rights to a speedy trial, (2) excluded as evidence the death certificate of a critical witness, and (3) allowed inflammatory and prejudicial rebuttal testimony of an incompetent witness. We disagree with the defendant's claims and affirm the judgment of the trial court.

The jury reasonably could have found the following relevant facts. On January 9, 1993, the victim, Vincent Broadnax, went to his second floor bedroom to gather his belongings and to move them to an apartment that he had just rented. The victim shared a kitchen, living room, and bathroom with Yolanda Zayas, her five chil-

dren, and her aunt, Odella Zayas, in the two-family dwelling. When the victim discovered that his clothes were missing, he began to question Odella Zayas. The defendant was in the apartment and threatened to shoot everybody if the victim continued making noise. After the victim stated that the defendant would not shoot anyone, the defendant ran into the victim's room and shot him with a sawed-off rifle. The bullet grazed the victim's upper right thigh. When the victim ran out of the house, the defendant followed and fired another shot that passed completely through the victim's thigh. Bridgeport police officer James Kirkland arrived at the scene as the victim was being transported to a hospital. Kirkland spoke to the defendant who stated that the assailant had fled down the street.

A few days after the shooting, the victim spotted the defendant in a Bridgeport courthouse. The victim telephoned the police station and then notified the state's attorney's office. Kirkland arrested the defendant in the courthouse shortly thereafter. Additional facts will be provided where relevant to a specific claim.

I

The defendant first claims that he was denied his statutory right to a speedy trial. We are unpersuaded.

The defendant was arrested on January 14, 1993, and the information was filed on January 15, 1993. Pursuant to General Statutes § 54-82m and Practice Book § 956B, the defendant, on September 14, 1993, moved for a speedy trial claiming that he had been incarcerated continuously for eight months since his arrest.

Section 54-82m grants a statutory right of speedy trial to defendants in criminal cases. This section authorizes the judges of the Superior Court to promulgate rules "to provide a procedure to assure a speedy trial." In accordance with this mandate, the judges of the Supe-

rior Court promulgated Practice Book §§ 956B through 956F. Section 956B (b) (1) provides that the trial of a defendant charged with a criminal offense after July 1, 1985, "shall commence within eight months from the filing of the information or from the date of the arrest, whichever is later, if . . . the defendant has been continuously incarcerated in a correctional institution of this state pending trial for such offense . . . ."

On October 13, 1993, the trial court informed the defendant that his trial would not commence until his counsel had completed a trial that had already begun. On October 15, 1993, the defendant moved to dismiss his case pursuant to Practice Book § 956D[1] and General Statutes § 54-82m. The trial court denied the motion because the defendant's attorney was unavailable. Despite the passage of thirty days between the filing of the motion for speedy trial and the commencement of the trial, the court stated that it could not "read a statute in strict legal technicalities." The court further opined that it would be "unreasonable to say that [the statutory language] is a mandatory 'shall' with no exceptions," and that any attempt to commence the trial within thirty days from the filing of the motion by appointing new counsel for the defendant would "violate his right to have a fair trial and to have the effective assistance of counsel." The trial commenced on October 25, 1993. Pursuant to § 956D, the information shall be dismissed with prejudice if the defendant is not brought to trial within eight months and a trial is not commenced within thirty days of the filing of a motion for a speedy trial, provided, however, the motion is filed "at any time after such time limit has passed . . . ."

---

[1] Practice Book § 956D provides in pertinent part: "If the defendant is not brought to trial within the applicable time limit . . . and . . . a trial is not commenced within thirty days of the filing of a motion for speedy trial by the defendant at any time after such time limit has passed, the information shall be dismissed with prejudice, on motion of the defendant filed after the expiration of such thirty day period. . . ."

Accordingly, "[i]n order for a motion for a speedy trial to be proper, it must be filed *after* the running of the requisite time period for commencing a trial." (Emphasis added.) *State* v. *Green,* 38 Conn. App. 868, 874, 663 A.2d 1085 (1995); *State* v. *Charlton,* 30 Conn. App. 359, 363, 620 A.2d 1297, cert. denied, 225 Conn. 922, 625 A.2d 824 (1993).

In the present case, because the information was filed on January 15, 1993, the eight month period expired at the end of September 14, 1993.[2] The earliest time, therefore, that the defendant could have properly filed his motion for speedy trial was September 15, 1993. Because the defendant filed his motion on September 14, 1993, his motion was premature and, thus, improper. As a matter of law, it could not be granted.

The trial court did not rule on this ground and neither party briefed or argued this issue. This, however, does not preclude us from affirming the trial court's decision on this ground. " 'Where the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it.' " *Kelley* v. *Bonney,* 221 Conn. 549, 592, 606 A.2d 693 (1992), quoting *Morris* v. *Costa,* 174 Conn. 592, 597–98, 392 A.2d 468 (1978). Accordingly, despite the trial court's reliance on mistaken grounds in reaching its decision to deny the motion to dismiss,

---

[2] In determining the expiration of the eight month period, we are guided by the statutory definition of "month" and our Supreme Court's decision in *Krajniak* v. *Wilson,* 157 Conn. 126, 130, 249 A.2d 249 (1968). General Statutes § 1-1 (i) provides that "[t]he word 'month' shall mean a calendar month . . . ." "[I]f the first day of the period is other than the first day of the month, such as July 5 in the present case, the period of one month would terminate at the end of August 4 rather that at the end of August 5. The same rule applies where the period, as here, consists of several months." *Krajniak* v. *Wilson,* supra, 130; see also *Infante* v. *Porath,* 29 Conn. App. 465, 468, 615 A.2d 1073 (1992).

we affirm the result because the motion was premature.[3]

## II

The defendant claims next that he was denied his state and federal constitutional rights to a speedy trial.[4] We disagree.

The defendant's sole argument in support of his claim is that he was prejudiced by the death of an allegedly critical defense witness, Yolanda Zayas.[5] While we agree that the death of a defense witness creates prejudice to a defendant,[6] we do not focus solely on prejudice in evaluating the defendant's claim. Instead, we must employ the balancing test formulated by the United States Supreme Court in *Barker* v. *Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), to determine whether the defendant has been denied his right to a speedy trial. That test balances the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. Id., 530. These factors are not mutually exclusive but, instead, "must be considered together with such other circumstances as may be relevant." Id., 533; see also *State* v. *Toste*, 198 Conn. 573, 590, 504 A.2d 1036 (1986). We will address each of the factors in turn.

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presump-

---

[3] As the motion was improper, the trial court should have dismissed it. In the circumstances of this case, we discern no practical difference between a denial and a dismissal.

[4] See U.S. Const., amend. VI; Conn. Const., art. I, § 8. The defendant offers no separate analysis of his state constitutional claim, and we therefore chose not to consider it. See *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992).

[5] Yolanda Zayas died two weeks prior to the commencement of the defendant's trial.

[6] See *Barker* v. *Wingo*, 407 U.S. 514, 532, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *State* v. *Morrill*, 197 Conn. 507, 527, 498 A.2d 76 (1985).

tively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker* v. *Wingo*, supra, 407 U.S. 530. Our courts have held that "[a]lthough nine months is not an overwhelming period of time [to be incarcerated before trial], it is of such length that there is a necessity for inquiry into the other factors that go into the balance." *State* v. *Brown*, 172 Conn. 531, 536, 375 A.2d 1024, cert. denied, 434 U.S. 847, 98 S. Ct. 153, 54 L. Ed. 2d 114 (1977). Because the defendant in the present case was incarcerated for over nine months from the time of his arrest to the commencement of his trial, we must now address the remaining *Barker* factors.

In examining the reason for the delay, we focus on whether the state was making a "deliberate attempt to delay the trial in order to hamper the defense" or whether there existed a "valid reason . . . [that] should serve to justify appropriate delay." *Barker* v. *Wingo*, supra, 407 U.S. 531. The trial court delayed the defendant's trial until the defendant's counsel completed another trial. Soon after the defendant's counsel had completed that trial, the defendant's trial began. We conclude that the trial court had a valid reason to delay the defendant's trial. While the court could have appointed new counsel for the defendant and commenced the trial immediately, that option would in all likelihood have deprived the defendant of his constitutional right to effective assistance of counsel.

In addressing the third *Barker* factor, we note that the defendant, by motion and by oral demand to the trial court, asserted his right to a speedy trial. "The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Id., 531–32.

We last address the prejudice to the defendant caused by the delay in commencing the trial. The defendant bases his argument on the death of one of his witnesses. He claims that Yolanda Zayas was an eyewitness to the shooting and would have testified that someone other than the defendant shot the victim. The defendant further claims that this witness would have provided relevant testimony as to why the defendant did not identify the person he claimed to be the actual shooter when questioned by the police. His claim of prejudice rests solely on his bare, unsupported assertions of what Yolanda Zayas would have said. We do not know what weight, if any, the trial court gave to the defendant's testimony on this issue. We do know that the trial court did not consider it to be sufficient, in and of itself, to warrant a dismissal.

"If witnesses die . . . during a delay, the prejudice is obvious." Id., 532; *State* v. *Morrill*, 197 Conn. 507, 527, 498 A.2d 76 (1985). While we agree that the death of a witness may cause some prejudice, the existence of such prejudice will not automatically entitle the defendant to a dismissal. "[This factor has] no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Barker* v. *Wingo*, supra, 407 U.S. 533.

The prejudice caused by the death of Yolanda Zayas and the defendant's assertion of his speedy trial right must be counterbalanced against the length of the defendant's incarceration and the reason for the delay. We conclude that the defendant's incarceration for a period of nine months is not extraordinary, and that there existed a valid reason for delaying the trial. These factors outweigh the other factors of *Barker*, and, therefore, the defendant was not deprived of his constitutional right to a speedy trial.

## III

We next address the defendant's claim that the trial court improperly excluded the death certificate of Yolanda Zayas. The defendant claims that the death certificate would have "corroborate[d] the death of this significant witness." The record reveals, however, that the defendant and the victim both testified as to the death of the witness and the date of that death. The state did not refute this testimony at trial. The introduction of the death certificate would, therefore, have been cumulative. The exclusion of "[e]vidence that is merely cumulative cannot constitute reversible error." *Schnabel* v. *Tyler*, 32 Conn. App. 704, 712, 630 A.2d 1361 (1993), aff'd, 230 Conn. 735, 646 A.2d 152 (1994).

## IV

The defendant last claims that the trial court improperly permitted the rebuttal testimony of Odella Zayas. In his brief, the defendant asserts that the testimony of Odella Zayas was improper because (1) it served to inflame the jury and to prejudice the defendant, (2) it was outside the scope of proper rebuttal testimony, (3) it was improper character and bad act evidence, (4) it was inconsistent with the state's proffer, and (5) the witness was incompetent to testify. The defendant further claims that the trial court should have granted the defendant's motion for a mistrial based on the claimed improper testimony of Odella Zayas. Our rules of practice and well established precedent preclude us from reviewing this evidentiary claim.[7]

"When raising evidentiary issues on appeal, all briefs should identify clearly what evidence was excluded or

[7] Practice Book § 4065 (d) (3) provides in pertinent part: "When error is claimed in [an evidentiary] ruling in a court or jury case, the brief or appendix shall include, where appropriate . . . the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; [and] the ruling . . . ."

admitted, where the trial counsel objected and preserved his rights and why there was error. . . . The bare assertion in a brief that the evidence was improperly [admitted], coupled with transcript page references, will not suffice. . . . It is our strong policy that rulings claimed as evidentiary errors to be reviewed by this court be provided and printed in the briefs as required and outlined by the Practice Book." (Citations omitted; internal quotation marks omitted.) *State* v. *Russell*, 29 Conn. App. 59, 62–63, 612 A.2d 809, cert. denied, 224 Conn. 908, 615 A.2d 1049 (1992).

The defendant offers no authority or legal analysis in support of his assertions. In addition, the defendant's brief fails to pinpoint where in the transcript his counsel objected to the testimony of Odella Zayas and preserved his appellate rights. The defendant does cite to pages in the transcript, but the references were not sufficient for our meaningful review. Consistent with our rules of practice and our precedent, we therefore decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.