STATE OF CONNECTICUT *v.* ROBERT SUMMERVILLE (5611)

BORDEN, DALY and O'CONNELL, Js.

Argued on September 30, 1987—decision released January 5, 1988

*Stephen F. Donahue,* with whom was *Elaine M. Scanlon,* for the appellant (defendant).

*Harry Weller,* deputy assistant state's attorney, with whom, on the brief, were *David Cohen,* assistant state's attorney, and *Thomas O'Brien,* legal intern, for the appellee (state).

DALY, J. The defendant was convicted by a jury of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1)[1] and possession of cocaine in violation of General Statutes § 21a-279.[2] He claims that the court erred (1) in limiting his cross-examination, (2) in denying his motion for admission of the results of a polygraph test, (3) in failing to strike the testimony of the state's expert rebuttal witness, and (4) in failing to grant his motions for judgment of acquittal, for a new trial, and for judgment of acquittal notwithstanding the verdict. We find no error.

The jury could have reasonably found the following facts. On October 12, 1985, the defendant and the victim, who had been friends for several years, met in a bar in Bridgeport. The victim invited the defendant to attend a party in Stamford later that evening. Instead of attending the party, the two checked into a hotel room in Stamford at approximately 11:30 p.m. that eve-

---

[1] General Statutes § 53a-55 (a) provides in pertinent part: "A person is guilty of manslaughter in the first degree when: (1) with intent to cause serious physical injury to another person, he causes the death of such person. . . ."

[2] Although the defendant was convicted of the offense of possession of cocaine, we note that he has not raised any claim of error regarding this particular conviction. Our review is, therefore, limited to the manslaughter conviction. See, e.g., *Butsch* v. *Planning & Zoning Commission,* 6 Conn. App. 686, 688 n.2, 506 A.2d 1093 (1983).

ning. Both the victim and the defendant remained in the room for several hours drinking, socializing, and ingesting cocaine.

At approximately 5:30 a.m. the following morning, the defendant summoned a security guard to the room claiming that the victim had suffered a stroke. When the security guard entered the room, he observed the victim on the floor partially covered by a bed sheet. He checked for a pulse but found none. The security guard called the police for assistance. Terrance Shea, a Stamford fireman and emergency medical technician, responded to the scene shortly thereafter. Shea checked the victim's pulse and upon finding none began efforts to resuscitate the victim. Resuscitation efforts continued until the victim arrived at Stamford Hospital, but the victim never responded and was pronounced dead.

At trial, the state produced Arkady Katsnelson, an associate chief medical examiner, who testified that the victim died as a result of manual strangulation. Katsnelson further testified that he found an abrasion on the victim's neck below the left ear which seemed to have been caused by someone's fingernail. Katsnelson also noted a separation of the victim's hyoid bone, a U-shaped bone deep inside of the neck, hemorrhages to the victim's neck, eye, heart, and lungs, and cocaine in the victim's blood and nose.

The defendant called Elliot Gross, the former chief medical examiner in Connecticut, to support his theory that the victim died of cocaine intoxication. Gross, after reviewing the records and examining the larynx, tongue and hyoid bone which were made available to him through the chief medical examiner's office, testified that the victim's injuries and hemorrhages were due to the resuscitation efforts. On cross-examination, Gross conceded that microscopic slides of the areas

of hemorrhaging could determine if the injuries had occurred before or after death, but that he did not order such slides in this case.

The state then called William Q. Sturner, chief medical examiner for the state of Rhode Island, as a rebuttal witness. Sturner rebutted Gross' opinion by testifying that the injuries he observed were inconsistent with resuscitation. He based his testimony in large part on his examination of microscopic slides made from the area of hemorrhaging, the type of slides the defendant's expert chose not to order. By examining the microscopic slides of where the hemorrhaging occurred, Sturner was able to determine that the hemorrhages occurred before the victim stopped breathing, and therefore were not the result of resuscitation efforts. Sturner concluded that the death of the victim was by strangulation.

I

In his first claim of error, the defendant contends that the trial court erred in limiting the defendant's examination of Sergeant Robert C. Tymon. The defendant claims (1) that his cross-examination of Tymon was impermissibly restricted, and (2) that he should have been allowed to introduce certain hearsay evidence through Tymon on direct examination. We disagree.

A

Tymon, the officer in charge of the detective squad which investigated the victim's death, testified in the state's case-in-chief about his involvement in the case. On direct examination, Tymon identified the defendant as the person he took to the hospital for treatment. Additionally, Tymon testified that he took fingernail scrapings from the defendant. It is evident from the record that Tymon was called by the state to elicit infor-

mation regarding the identification of the defendant as the one from whom he took fingernail scrapings.

On cross-examination, the defendant sought to question Tymon regarding the investigation and his interviewing of witnesses. The state objected to the questions on the basis that the questions were outside the scope of direct examination. The defendant's response was simply that questions regarding areas of the investigation were permissible. The defendant did not claim that his questions went to the matter of the credibility of the witness. The court sustained the state's objection and ruled that the defendant could call Tymon in his case.

It is a well established rule that cross-examination is restricted to matters covered on direct. *State* v. *Pierson,* 201 Conn. 211, 224, 514 A.2d 724 (1986); *State* v. *Scott,* 11 Conn. App. 102, 107, 525 A.2d 1364, cert. denied, 204 Conn. 811, 528 A.2d 1157 (1987). "A question [on cross-examination] is within the scope of the direct examination if it is designed to 'rebut, impeach, modify, or explain any of the defendant's direct testimony.' " *State* v. *Sharpe,* 195 Conn. 651, 657, 491 A.2d 345 (1985), quoting *State* v. *Zdanis,* 173 Conn. 189, 196, 377 A.2d 275 (1977). The trial court is given broad discretion to determine whether a particular line of cross-examination is within the scope of the direct examination. *State* v. *McCarthy,* 197 Conn. 247, 261, 496 A.2d 513 (1985); *State* v. *Apostle,* 8 Conn. App. 216, 230, 512 A.2d 947 (1986). A review of the record in this case indicates that the trial court did not abuse its discretion in limiting the defendant's cross-examination.[3]

---

[3] We note, further, that even if the restriction on cross-examination was error, it would have been harmless since the defendant was granted the opportunity to call the witness in his case-in-chief, which was eventually done. B. Holden & J. Daly, Connecticut Evidence (Sup. 1983) § 10c (2).

## B

The defendant called Tymon on direct examination and inquired about his investigation of the death of the victim. Tymon testified that he had questioned Gordon Anderson of California, who was staying in the room next to the one shared by the victim and the defendant on the night in question. The state objected to any testimony concerning the conversation between Anderson and the witness on the grounds of hearsay. The state's objection was sustained. The defendant concedes that the testimony was hearsay but argues that the testimony should have been admitted under the "residual exception" to the hearsay rule.

"When a defendant offers evidence that is hearsay, his proffer runs counter to our well established preference for having a witness appear personally in court, under oath, so that his testimony can be subjected to cross-examination and his credibility adjudged in accordance with his demeanor." *State* v. *Aillon,* 202 Conn. 385, 390, 521 A.2d 555 (1987). Hearsay evidence, however, can be admissible if it is both reliable and necessary. *State* v. *Sharpe,* supra, 664. "The necessity factor, [our Supreme Court has said], is reflected in the prerequisite that the declarant be unavailable." *State* v. *Frye,* 182 Conn. 476, 480, 438 A.2d 735 (1980). The moving party has the burden of proving the declarant's unavailability. Id.; C. McCormick, Evidence (3d Ed. 1984) § 253. "Absent a showing by the proponent of the proffered hearsay statement of the unavailability of the declarant, the declarant's statement will be excluded from evidence." *State* v. *Frye,* supra, 481. In meeting his burden of proving the unavailability of a declarant, the proponent of proffered hearsay testimony must demonstrate that he has used due diligence to procure the attendance of the absent witness. *State* v. *Weinrib,* 140 Conn. 247, 251, 99 A.2d 145 (1953).

All that is required by the proponent of the hearsay testimony is a good faith effort to procure the declarant's attendance. *State* v. *Aillon,* supra, 392.

In this case, the defendant failed to prove unavailability. The defendant's mere assertion that he could not find "any Gordon Anderson in Corbalitos, California" does not amount to a good faith effort. Since we conclude that Anderson was not shown to be unavailable, we need not reach the issue of trustworthiness. *State* v. *Frye,* supra, 480.

## II

The defendant's second claim of error is that the trial court erred in denying the admission of the results of a polygraph test. The defendant correctly recognizes that our Supreme Court has consistently held polygraph evidence to be inadmissible, but urges this court to reassess this position. We see no reason to do so at this time. Our Supreme Court has recently rejected the use of polygraph tests. *State* v. *Miller,* 202 Conn. 463, 484–86, 522 A.2d 249 (1987). In *Miller,* the court ruled in accordance with the well established rule of this state that the "questionable accuracy" of polygraph tests serves as a compelling reason for excluding such evidence. Id., 486. It is not our function to overrule established Supreme Court precedent. *O'Connor* v. *O'Connor,* 4 Conn. App. 19, 20, 492 A.2d 207 (1985), rev'd on other grounds, 201 Conn. 632, 519 A.2d 13 (1987).

## III

The defendant's third claim is that the trial court erred in ruling that the rebuttal testimony of Sturner was admissible. Sturner's testimony was largely based on medical slides that were examined the day before testifying. After examining these slides, Sturner established that the victim's death was caused by strangu-

lation. The defendant argues that the testimony of Sturner should have been stricken because (1) it was inappropriate for rebuttal, and (2) the slides that were the basis of his testimony were never made available to the defendant pursuant to his discovery request.

## A

We first note that rebuttal testimony is necessarily limited to refuting evidence and impeaching or rehabilitating witnesses, not for merely bolstering one's case. "The admission of rebuttal evidence is ordinarily within the sound discretion of the trial court." *State* v. *Lisella,* 187 Conn. 335, 337, 445 A.2d 922 (1982); see also B. Holden & J. Daly, Connecticut Evidence (Sup. 1983) § 12; *State* v. *Addazio,* 169 Conn. 416, 427, 363 A.2d 153 (1975); *Vazzano* v. *Slater,* 6 Conn. App. 1, 5, 502 A.2d 440 (1986). "Unless the court in its discretion permits it, the state is not permitted on rebuttal to present witnesses who merely support the state's case, but is confined to testimony which is directed at refuting the evidence given by the defendant." *State* v. *Addazio,* supra, 427.

It is abundantly clear from the record that Sturner's testimony refuted Gross' testimony. It was, therefore, appropriate for rebuttal.

## B

The defendant also argues that the rebuttal testimony should have been stricken because the slides used by Sturner were never made available to him. The defendant relies on three arguments in support of this claim of error. First, the defendant cites Practice Book § 741 (6), which prohibits the introduction of any results of scientific tests that are not submitted to the other party. The defendant also argues that testimony concerning the slides should have been stricken under *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10

L. Ed. 2d 215 (1963). Finally, the defendant argues that he was deprived of his constitutional right of confrontation of witnesses against him under the sixth and fourteenth amendments to the United States constitution.

"The purpose of criminal discovery is to prevent surprise and to afford the parties a reasonable opportunity to prepare for trial." *State* v. *Festo,* 181 Conn. 254, 265, 435 A.2d 38 (1980). There was no such element of surprise in this case.

The defendant's expert, a former chief medical examiner for Connecticut, was aware of the use of microscopic slides in the manner used by Sturner. Furthermore, the defendant's expert testified on cross-examination that medical slides would be helpful in determining when the death occurred but that he chose not to use such slides. The state fully cooperated with Gross' requests for specimens retained from the autopsy, including his request to have the larynx prepared in a certain way. The state should not be punished, when it has fully cooperated with the defendant's expert, but has presented an expert who performed a more thorough evaluation of the cause of death.

The defendant's assertion that the surprise was due to the state's withholding of information is without merit. The record indicates that Sturner examined the slides the day before he testified. Although this left little time for the defendant to examine the slides, the state informed the defendant that they were agreeable to a continuance. The defendant, however, rejected the offer of a continuance and cannot now be heard to argue that he had no time to prepare. *State* v. *Weidenhoff,* 205 Conn. 262, 275, 533 A.2d 545 (1987), quoting *State* v. *Scognamiglio,* 202 Conn. 18, 25, 519 A.2d 607 (1987) ("Action induced by an appellant cannot ordinarily be a ground of error."); *State* v. *Gonzalez,* 13 Conn. App. 40, 44–45, 534 A.2d 623 (1987).

We find the defendant's argument fails for these two reasons. The record indicates that the slides were not available until the day before Sturner's testimony was given. If the defendant accepted the state's offer for a continuance, the defendant would have had the time to examine the slides. The trial court, having no motion for a continuance before it, did not err in concluding that the defendant had sufficient time to examine the slides and to prepare a proper cross-examination.

IV

The defendant's final claim is that the trial court erred in denying the motion to acquit, motion for a new trial, and motion for acquittal notwithstanding the verdict. After reviewing each claim, we find that the trial court did not err.

The defendant first argues that the trial court erred in not granting his motion to acquit, made at the conclusion of the state's case and renewed after the close of all the evidence, based on insufficient evidence. "Although the defendant was indicted for murder, his subsequent conviction of the lesser included offense of manslaughter implicitly acquitted him of the murder charge. *State* v. *Rodriguez,* 180 Conn. 382, 398–99, 429 A.2d 919 (1980). In these circumstances, his challenge to the indictment is academic, and thus we need not address that claim. See *State* v. *Nardini,* 187 Conn. 109, 112, 445 A.2d 304 (1982)." *State* v. *Shipman,* 195 Conn. 160, 162, 486 A.2d 1130 (1985).

The defendant's additional claims of error with respect to the denial of the motion for a new trial and the motion for acquittal notwithstanding the verdict are, in essence, challenges to the sufficiency of evidence. Our Supreme Court has concisely summed up our scope of review for such claims in *State* v. *Simino,* 200 Conn. 113, 116, 509 A.2d 1039 (1986): "When a claim on appeal challenges the sufficiency of the evi-

dence, we undertake a two part task. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt." Id., 116–17.

The evidence in this case overwhelmingly supports the jury's verdict. The central factual issue was whether the victim was manually strangled. The state presented expert medical testimony to establish the defendant's guilt, which was contradicted by the defendant. See id. A careful review of the evidence indicates that the evidence, if believed by the jury, was sufficient to convict the defendant of manslaughter in the first degree.

There is no error.

In this opinion the other judges concurred.