STATE OF CONNECTICUT *v.* MARK T. WALL
(12765)

Dupont, C. J., and Lavery and Spear, Js.

Argued October 26, 1995—decision released March 19, 1996

*Richard E. Hayber*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Ronald M. Dearstyne*, assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of criminal impersonation in violation of General Statutes § 53a-130 (a) (3), disorderly conduct in violation of General Statutes § 53a-182 (a) (2), reckless driving in violation of General Statutes § 14-222 (a), reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a) and reckless endangerment in the second degree in violation of General Statutes § 53a-64. On appeal, the defendant claims that (1) the trial court improperly denied him both a statutory and constitutional right to a speedy trial and a constitutional right to a speedy sentencing after conviction, (2) the state failed to prove an element of criminal impersonation, (3) the trial court improperly instructed the jury, (4) the trial court improperly prohibited the testimony of witnesses, and (5) the sentence constituted cruel and unusual punishment. We affirm the judgment of conviction.

The jury heard evidence from which the following facts reasonably could have been found. On September 28, 1989, at about 4:30 p.m., two cars resembling police cruisers were in pursuit of a person on a dirt bike in the town of Plymouth. The defendant and a second individual were driving at a high rate of speed in cars equipped with flashing lights, radio antennas, sirens and alternating or "wig-wag" headlights. The defendant and the other driver, traveling at speeds of over 50 mph, came within several feet of hitting a small boy and traveled in residen-

tial areas where children were playing on or near the road. The defendant and the other driver left the area after they failed to apprehend the driver of the dirt bike. The defendant was never a member of the Plymouth police department, the Connecticut state police, or the Litchfield county sheriff's department.

The jury found the defendant guilty of all charges tried to it on August 13, 1991, and the trial court sentenced him on June 30, 1993.[1]

I

STATUTORY AND CONSTITUTIONAL CLAIMS

A

Speedy Trial

The defendant argues that the trial court improperly denied his motion to dismiss and motion for judgment of acquittal which he based on his alleged failure to receive a speedy trial within the requisite statutory period.[2] On April 13, 1990, the defendant was placed

---

[1] The charge of illegal use of emergency flashing lights in violation of General Statutes § 14-96q was tried to the court, and the defendant was found not guilty on that count.

[2] General Statutes § 54-82m provides: "Rules re speedy trial to be adopted by judges of superior court effective July 1, 1985. In accordance with the provisions of section 51-14, the judges of the superior court shall make such rules as they deem necessary to provide a procedure to assure a speedy trial for any person charged with a criminal offense on or after July 1, 1985. Such rules shall provide that (1) in any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of a criminal offense shall commence within twelve months from the filing date of the information or indictment or from the date of the arrest, whichever is later, except that when such defendant is incarcerated in a correctional institution of this state pending such trial and is not subject to the provisions of section 54-82c, the trial of such defendant shall commence within eight months from the filing date of the information or indictment or from the date of arrest, whichever is later; and (2) if a defendant is not brought to trial within the time limit set forth in subdivision (1) and a trial is not commenced within thirty days of a motion for a speedy trial made by the defendant at any time after such time limit has passed, the information or indictment shall be dismissed. Such rules shall include

under arrest[3] and released soon after. The defendant filed a number of motions after his arrest, and on April 19, 1991, a little over one year from the arrest, he filed a motion for a speedy trial. On May 14, 1991, the trial court advised the parties that jury selection would commence the following day. Defense counsel informed the court, however, that he would be unavailable until the following week.[4] On May 29, 1991, the defendant filed a motion to dismiss, claiming a violation of his statutory

provisions to identify periods of delay caused by the action of the defendant, or the defendant's inability to stand trial, to be excluded in computing the time limits set forth in subdivision (1)."

[3] The filing date of the information is not clear from the record. We have used the date of the defendant's arrest for purposes of our calculations for his statutory speedy trial.

[4] The following colloquy occurred between defense counsel and the trial court:

"The Court: . . . I would advise you, Mr. Marcus [defense counsel], that we are going to start, or I did intend to start jury selection tomorrow in this case. . . .

"Mr. Marcus: The problem—

"The Court: The time estimates are always shaky.

"Mr. Marcus: As I stated, Your Honor, there are motions pending which I think some of them would best be heard before the jury selection, but that is Your Honor's prerogative. And secondly, as I stated before the record was being made, that Thursday and Friday of this week I'll be in Saint-Louis attending my son's college graduation and Monday afternoon at 2:00 p.m.—

"The Court: That's no problem.

"Mr. Marcus: Judge Norko is resuming a juvenile trial that I'm on that commenced yesterday afternoon. So that I would, of course, want to be excused Thursday and Friday obviously.

"The Court: Well, I don't think it makes a heck of a lot of sense to haul you in here tomorrow to pick—start a jury.

"Mr. Marcus: . . . As I say, my client's girlfriend is lessee of the car that's been held for a year, they are ready for quick disposition, but again, I do have a personal life as well as a professional life, and I don't want to miss the graduation.

"The Court: Well, you made a speedy trial motion.

"Mr. Marcus: And we meant it.

"The Court: It puts the heat on the court to do something about it, and I'm trying to do it now, but I can't waste the next three days. I'm going to pick a jury in another case.

"Mr. Marcus: As Your Honor will.

"The Court: And then that may put you, you know, another several weeks.

right to a speedy trial. The trial court denied the motion. Voir dire commenced on June 12, 1991.

The trial court based its denial of the defendant's motion to dismiss for lack of a speedy trial on a finding that the defendant had waived his statutory right to a speedy trial when he sought a postponement of the trial's commencement in order for counsel to attend a personal function. The defendant argues that the trial court improperly found that he waived his statutory right to a speedy trial because, although he agreed to a tolling of the period, he did not consent to a continuance to a time convenient for the court's docket.

"Mr. Marcus: Well, that's unfortunate. Of course the speedy trial motion was not frivolously filed and there are no [the defendant disputed that he said 'no' and claims that he most probably said 'known'] constitutional considerations. Obviously, however, my personal unavailability Thursday and Friday of this week could be obviously a tolling factor and I admit that and my client understands that.

"The Court: Well, it tolls it for more than just two days because I can't sit here and twiddle my thumbs and not be utilizing the facilities that the court and jury that we are paying hundreds of dollars a day to come in, so I may pick another case, but you'll be next.

"Mr. Marcus: I'll ask Your Honor to try to facilitate this case as much as possible. There has been a car—

"The Court: I will.

"Mr. Marcus:—seized. It's been seized for over a year now since April of '90. The lessee—

"The Court: I'll do my best.

"Mr. Marcus:—is being sued for seventeen thousand.

"The Court: I understand. I told you that I'll do my best to get you on very shortly, but I'm not going to sit here and twiddle my thumbs for three days, so—

"Mr. Marcus: I understand. . . .

"The Court: . . . I'm going to try to get you on. I was going to get you on as the next case. Maybe it will be the next case.

"Mr. Marcus: I hope so. I say, Your Honor, this is the situation where the defendant is certainly interested in a speedy trial.

"The Court: Fine. Okay.

"Mr. Marcus: And I just have this one situation that comes up every four years. Hopefully won't come up again for many years. My son is graduating from college, I certainly don't want to miss that.

"The Court: Okay. Have a good time.

"Mr. Marcus: Thank you, Your Honor."

Because we find that the filing of the motion for a speedy trial was improper because it was untimely, we need not determine whether the defendant's actions constituted a waiver of his statutory right to a speedy trial.

Pursuant to Practice Book § 956D, "[i]f the defendant is not brought to trial within the applicable time limit set forth in Secs. 956B and 956C, and a trial is not commenced within thirty days of the filing of a motion for speedy trial by the defendant at any time after such time limit has passed, the information shall be dismissed with prejudice, on motion of the defendant filed after the expiration of such thirty day period. . . ." Practice Book § 956B (b)[5] requires that a defendant who is not incarcerated be brought to trial within twelve months after his arrest or the filing date of the information, whichever is later, excluding any time as allowed under Practice Book § 956C. As a prerequisite to filing a motion for a speedy trial, the time limitations set forth in § 956B, excluding certain time periods in accordance with § 956C, must have expired.

The defendant failed to discount any excludable time in calculating the date that he could have filed a motion for a speedy trial. The defendant was arrested on April 13, 1990, and was released shortly thereafter. The trial court entertained several pretrial motions made by the defendant. Section 956C provides that excludable periods of time are "(a) Any period of delay resulting from other proceedings concerning the defendant, including

---

[5] Practice Book § 956B (b) provides in relevant part: "Except as otherwise provided herein and in Sec. 956C, the trial of a defendant charged with a criminal offense on or after July 1, 1985, shall commence within twelve months from the filing of the information or from the date of the arrest, whichever is later. . . ." If an individual is "continuously incarcerated" and meets other specified conditions, the trial must be held within eight months. Practice Book § 956B (b).

Since the defendant was not incarcerated, the twelve month limitation applies in this case.

but not limited to . . . (4) the time between the commencement of the hearing on any pretrial motion and the issuance of a ruling on such motion; (5) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the judicial authority . . . ."[6]

It is evident from the transcripts provided and the trial court file that several motions were filed after the defendant's arrest. The defendant filed motions to dismiss, for a bill of particulars, for disclosure and production, for access to the file of a codefendant, to suppress certain statements of others, and for return of the car allegedly driven by the defendant in the course of committing the crime. Hearings were held on May 11, 1990, July 13, 1990, August 13, 1990 and March 19, 1991. The transcript of the hearing on March 19, 1991, indicates that it was to be continued to another date, but no other transcript is on file with this court. On March 19, 1991, the trial court ordered the defendant to fax relevant cases to the court on March 20, 1991, and continued the hearing to another date. Whether those cases were in fact given to the court is unknown. The trial court, without written decision, denied all the motions on June 14, 1991. Five days are excluded in accordance with § 956C (a) (4) because of the hearings that were held and the court's request for cases from

---

[6] Prior to July 25, 1995, the words of § 956C (4) were "delay resulting from the hearing on any pretrial motion." This rule was in effect at the time the defendant moved for a speedy trial. The rule was amended to change the interpretation of that section as interpreted in *State* v. *Ortiz*, 14 Conn. App. 493, 498–99, 542 A.2d 734 (1988), and *State* v. *Charlton*, 30 Conn. App. 359, 364–65, 620 A.2d 1297, cert. denied, 225 Conn. 922, 625 A.2d 824 (1993). The purpose of the change in language was to make clear that the period of time to be excluded was only that amount of time that "may fairly be said actually to delay the start of the trial." Commentary, Practice Book Revisions Being Considered by the Rules Committee of the Superior Court, 56 Conn. L.J., No. 45, p. 75C (May 9, 1995).

the defendant. In addition, the time for the trial court's issuance of its rulings on the motions, must also be excluded, up to thirty days. Practice Book § 956C (5). The pretrial motions resulted, therefore, in at least a total of thirty-five days of excludable time.

The twelve month time period, as calculated by the requirements of the rules of practice had not expired when the defendant filed his motion for a speedy trial. The earliest date the defendant could have filed his motion for a speedy trial was May 19, 1991. He filed it on April 19, 1991, and therefore, it was not timely. We affirm the denial of the motion because, as a matter of law, the denial was mandated by the applicable statutes and rules. See *State* v. *Brown*, 40 Conn. App. 483, 485–87, 671 A.2d 1316 (1996); *State* v. *Green*, 38 Conn. App. 868, 875, 663 A.2d 1085 (1995).

Where the trial court reaches the correct result on a basis different from that determined on review to support that result, we will sustain the trial court's action. See *State* v. *Geyer*, 194 Conn. 1, 17, 480 A.2d 489 (1984) (*Shea, J.*, concurring); *State* v. *Green*, supra, 38 Conn. App. 875. We do not decide, therefore, whether the trial court was correct in determining that the defendant had waived his statutory right to a speedy trial because the trial court's decision to deny the defendant's motion was correct for other reasons as a matter of law.

The defendant also asserts that his constitutional right to a speedy trial was violated. "The Supreme Court of the United States and this court have identified four factors which form the matrix of the defendant's constitutional right to speedy adjudication: '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.' *Barker* v. *Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *State* v. *Lloyd*, 185 Conn. 199, 208, 440 A.2d 867 (1981); *State* v. *Nims*, 180 Conn. 589, 591, 430 A.2d

1306 (1980). A balancing test is to be applied on a case by case basis. None of the factors standing alone demands a set disposition; rather it is the total mix which determines whether the defendant's right was violated. *State* v. *Nims*, supra, 591–92." *State* v. *Johnson*, 190 Conn. 541, 544–45, 461 A.2d 981 (1983).

The defendant has failed to provide an analysis of any of the *Barker* factors; see *State* v. *Mozell*, 37 Conn. App. 574, 580–81, 657 A.2d 686, cert. denied, 234 Conn. 910, 660 A.2d 355 (1995); and merely states that the fourteen month delay between the date of his arrest and the beginning of his trial prejudiced his defense. "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker* v. *Wingo*, supra, 407 U.S. 530; see also *Pelletier* v. *Warden*, 32 Conn. App. 38, 47, 627 A.2d 1363, cert. denied, 227 Conn. 920, 632 A.2d 694 (1993). Our courts have not held that any particular length of delay is presumptively prejudicial, but have stated that an extensive delay warrants an inquiry into the other factors of *Barker*. See, e.g., *State* v. *Gasparro*, 194 Conn. 96, 100, 480 A.2d 509 (1984), cert. denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985) (three and one-half years); *State* v. *Davis*, 192 Conn. 739, 740–41, 474 A.2d 776 (1984) (twenty-six months); *State* v. *Cleary*, 3 Conn. App. 349, 350–51, 488 A.2d 831 (1985) (thirty-eight months). There is "no constitutional basis for holding that the speedy trial right can be quantified into a specific number of days or months." *Barker* v. *Wingo*, supra, 523.

Although no exact length of time has been established to be sufficient to presume prejudice, a delay of over two years is sufficient to cause investigation into the other factors of *Barker*. See *State* v. *Almgren*, 12 Conn. App. 364, 369, 530 A.2d 1089 (1987). In the present case, the delay was fourteen months, the defendant was not

incarcerated before or after the trial, the defendant has given no basis for his claim of prejudice to his defense, the reason for the initial delay was his own counsel's request for a postponement, and the delay was not a purposeful action by the state, but was related to the smooth administration of the criminal docket. Even if fourteen months is considered the catalyst for further inquiry, that inquiry, which includes the weighing of the other *Barker* factors, leads us to conclude that the defendant was not denied his constitutional right to a speedy trial.

B

Speedy Sentencing

The defendant argues that the approximately twenty-two month delay between conviction and sentencing violated his right to a speedy trial pursuant to the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. The defendant made this claim in a motion in arrest of judgment and for dismissal dated June 29, 1993. The defendant was sentenced on June 30, 1993.

The state argues that the record is inadequate for us to review this claim because the trial court denied the defendant's motion without any indication of the reason for doing so. If the state were correct, we would not need to reach the defendant's claim that the delay in sentencing was a violation of the defendant's constitutional rights. We, therefore, must first decide whether the record is adequate for review.

A record is adequate to review such a claim if the record sufficiently supplies a factual basis for us to conclude as a matter of law whether a constitutional right to a speedy sentence was denied to the defendant. The question of whether the defendant was denied a constitutional right to a speedy sentence based on the

facts in the record "is a legal conclusion that, if made by a trial court, is subject to plenary review by an appellate court. See *State* v. *Geisler*, 222 Conn. 672, 693, 610 A.2d 1225 (1992)." *State* v. *Torres*, 230 Conn. 372, 379, 645 A.2d 529 (1994). Accordingly, if there is, in the trial record, a sufficient underlying set of facts on which an appellate court can answer the question of whether a right to a speedy sentence was violated, the record is adequate for review. Id., 379–80.[7]

The record shows that the defendant was convicted on August 13, 1991, and was sentenced on June 30, 1993, and indicates that several posttrial motions were filed. On August 16, 1991, the defendant moved for an acquittal, based on an alleged denial of a right to a speedy trial, and moved for a new trial, citing numerous claims. On December 31, 1991, the trial court heard oral argument on the motions. The defendant filed a memorandum of law in support of the motions on March 26, 1992. The trial court denied the motions on April 2, 1993, with a memorandum of decision. We conclude that the record sufficiently supplies this court with factual predicates on which to make a determination of whether the defendant's constitutional right to a speedy sentence was denied.

The defendant asserts that the sixth amendment to the United States constitution[8] and article first, § 8, of our constitution[9] recognize a speedy trial right that

[7] Although *State* v. *Torres*, supra, 230 Conn. 379–80, reviews the adequacy of the record in the context of a claim made under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), *State* v. *Geisler*, supra, 222 Conn. 672, did not involve a claim for review under *Golding*. The court's review is plenary in either case, and, therefore, the record receives the same de novo scrutiny.

[8] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State . . . ."

[9] Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. . . ."

extends to the sentencing phase of criminal prosecutions. There is no state appellate decision nor any United States Supreme Court decision that has definitively established such a right, although at least one federal District Court has done so, and there are Connecticut cases that come to the brink of the establishment of such a right.

The United States Supreme Court addressed this issue in *Pollard* v. *United States*, 352 U.S. 354, 77 S. Ct. 481, 1 L. Ed. 2d 393 (1957). Although it reviewed the claim to determine whether the defendant had been sentenced within a reasonable time so as not to violate his speedy trial or due process rights, the court refused to determine whether the sixth amendment encompassed such a speedy sentencing right, but, rather, assumed arguendo that it did. Id., 361. After this decision, numerous federal and other state courts have made the same assumption "arguendo" in addressing a claim of this nature, but have not specifically established the right to a speedy sentencing. See, e.g., *Tinghitella* v. *California*, 718 F.2d 308, 312–13 (9th Cir. 1983); *Brady* v. *Superintendent*, 443 F.2d 1307, 1310 (4th Cir. 1971); *Brooks* v. *United States*, 423 F.2d 1149, 1151 (8th Cir. 1970), cert. denied, 400 U.S. 872, 91 S. Ct. 109, 27 L. Ed. 2d 111 (1974); *United States* v. *Tortorello*, 391 F.2d 587, 589 (2d Cir. 1968); *State* v. *Fennell*, 218 Kan. 170, 178–79, 542 P.2d 686 (1975); *Erbe* v. *State*, 276 Md. 541, 544, 350 A.2d 640 (1976); *Commonwealth* v. *Pounds*, 140 Pa. 621, 626–27, 417 A.2d 597 (1980).

At least one federal circuit, however, has cited *Pollard* and found that a speedy sentencing right exists under the sixth amendment to the federal constitution. In *Juarez-Casares* v. *United States*, 496 F.2d 190 (5th Cir. 1974), the court expressly held that a speedy trial right under the sixth amendment to the United States constitution extends to the sentencing phase of criminal proceedings. "[T]he imposition of sentence is part of

the trial for the purposes of the Sixth Amendment speedy trial guarantee, so, in exercising his discretion, the trial judge is bound by both the rule[10] and the Sixth Amendment." Id., 192, citing *Pollard* v. *United States*, supra, 354 U.S. 361.

*Barker* v. *Wingo*, supra, 407 U.S. 514, was decided fifteen years after *Pollard*. Although *Barker* deals with a delay in bringing the defendant to trial, rather than a delay in sentencing after conviction, the Supreme Court, in the course of discussing of the speedy trial right, stated that "delay between arrest and punishment may have a detrimental effect on rehabilitation." Id., 520. " '[I]t is desirable that punishment should follow offence as closely as possible; for its impression upon the minds of men is weakened by distance, and, besides, distance adds to the uncertainty of punishment, by affording new chances of escape.' " Id., 520 n.10, quoting J. Bentham, The Theory of Legislation (Ogden Ed. 1931) p. 326. We use this dicta as the beginning of our analysis of whether a right to a speedy sentencing is a constitutional right under Connecticut law.

Our research reveals only two Connecticut cases that have considered the issue of whether a speedy sentencing right exists, but both were decided when Connecticut had a statute, General Statutes § 54-91, which required a court to sentence a defendant within ten days of conviction unless a stay was ordered. The statute was repealed in 1976 and no similar statute was enacted.[11]

---

[10] Rule 32 (a) (1) of the Federal Rules of Criminal Procedure provides that a sentence shall be imposed without unreasonable delay.

[11] General Statutes (Rev. to 1975) § 54-91, which was repealed by No. 76-336, § 10, of the 1976 Public Acts, provided: "Whenever any person is convicted of an offense for which the punishment may be confinement in the Connecticut Correctional Institution, Somers, the court before which he has been convicted shall pass sentence within ten days from the date of conviction unless there is a stay of sentence by order of the court." The predecessor to § 54-91 was General Statutes (1949 Rev.) § 8807 and provided: "Whenever any person shall be convicted of an offense for which the punishment may

In *State* v. *Taylor*, 153 Conn. 72, 214 A.2d 362 (1965), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966), the court reviewed a claim that a delay in the sentencing of a witness in one case was a violation of the defendant's state and federal constitutional rights to a fair trial in another case. The court determined that even if the witness had a constitutional right to a speedy sentencing, the defendant could not claim the benefit of the witnesses' right. In dicta, the court stated that absent a request by a defendant for an immediate sentencing, a waiver of any such right may be deemed to have occurred. Id., 80. The case did not refer to § 54-91.

In *State* v. *Moore*, 158 Conn. 461, 262 A.2d 166 (1969), no constitutional right was claimed and § 54-91 was cited. In dicta, the court used strong language to support the proposition that it is improper for a trial court to fail to sentence a defendant promptly. "An appeal lies only from a final judgment, and there can be no judgment in a criminal case until sentence is pronounced. . . . A person accused of crime and formally presented before a criminal court must not be left in the limbo of a temporary stay of sentence by the device of a suspended judgment. . . . In a criminal case it is never proper for the court to suspend judgment, although the court may properly render judgment by imposing sentence and then suspend the execution of the sentence for an ascertainable period, thereby protecting the right of appeal." (Citations omitted.) Id., 463.

In the absence of any specific statute or rule of practice governing a right to a speedy sentence, we next examine cases concerning other situations claimed to

be confinement in the State Prison, the court before which he shall have been convicted shall pass sentence within ten days from the date of conviction unless there be a stay of sentence by order of the court." The stay provided would presumably be necessary in the event a presentence investigation were necessary. See General Statutes § 54-91a.

be encompassed by the speedy trial right. Although our appellate courts have not recognized a speedy trial right for prearrest delays,[12] a speedy trial right to appeal has been recognized. *State* v. *DePastino*, 228 Conn. 552, 560, 638 A.2d 578 (1994); *State* v. *Files*, 183 Conn. 586, 589, 441 A.2d 27 (1981).[13] In *DePastino*, the defendant appealed from the trial court's denial of a motion for a new trial claiming an alleged violation of his right to a speedy trial. The defendant's appeal was delayed for almost three years because of difficulty in obtaining the trial transcript. "In determining whether a defendant's right to a speedy trial has been violated, this court has balanced, on a case by case basis, several factors first identified by the United States Supreme Court in *Barker* v. *Wingo*, [supra, 407 U.S. 530]. *Gaines* v. *Manson*, [194 Conn. 510, 521, 481 A.2d 1084 (1984)]; *State* v. *Files*, supra [589]. . . . We apply the same factual matrix to

---

[12] A six month delay in executing an arrest warrant does not violate a defendant's speedy trial right. *State* v. *Baker*, 164 Conn. 295, 297, 320 A.2d 801 (1973). " 'On its face, the protection of the [Sixth] Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been "accused" in the course of that prosecution.' " Id., 296, quoting *United States* v. *Marion*, 404 U.S. 307, 313, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971); see also *State* v. *Hodge*, 153 Conn. 564, 571, 219 A.2d 367 (1966) (where defendant argued that three week delay between incident and his arrest violated his right against unreasonable seizures of his person, court analyzed this claim from due process and unreasonable seizure perspective and employed test similar to one outlined in *Barker* v. *Wingo*, supra, 407 U.S. 530).

[13] In *State* v. *Files*, supra, 183 Conn. 588, the defendant moved to set aside the judgment based on Practice Book § 3109 (now § 4055), which provided: "If a party shall fail to defend against an appeal with proper diligence, the supreme court may, on motion by any other party to the appeal or on its own motion, set aside in whole or in part the judgment under attack . . . ." Our Supreme Court in *Files* utilized the speedy trial balancing test as delineated in *Barker* v. *Wingo*, supra, 407 U.S. 530. "In our review of a defendant's right to have his appeal defended by the state with due diligence, Practice Book § 3109, we can find guidance in the analogous rules that have been developed to protect a defendant's right to a speedy trial." *State* v. *Files*, supra, 588. This case has since been used to support the proposition that the speedy trial right applies to the appeal phase. *State* v. *DePastino*, supra, 228 Conn. 560.

the defendant's claim of a lack of a speedy appeal." (Citations omitted; internal quotation marks omitted.) *State* v. *DePastino*, supra, 560.

The underlying purpose of the speedy trial right is to avoid prejudice to the defendant. "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker* v. *Wingo*, supra, 407 U.S. 532. Although an individual, asserting a speedy sentencing right has already received a trial, concerns of prejudice can still exist because of a delay in sentencing.

When sentencing has not yet occurred, the appellate rights of a defendant are put in limbo. *State* v. *Moore*, supra, 158 Conn. 463. Because there is included in the constitutional speedy trial right, a right to a speedy appeal to the extent an appeal right has been granted by the legislature; see *State* v. *DePastino*, supra, 228 Conn. 560; we conclude that the constitutional speedy trial right embodies a right to a speedy sentencing. Without such a right, the defendant's right to a speedy appeal has been denied.

The next question we must decide is whether that right of the defendant was violated on the facts of this case. The case of *Juarez-Casares* v. *United States*, supra, 496 F.2d 190, is instructive. *Juarez-Casares* involves a defendant who was charged, on March 17, 1970, with eleven counts of aiding and abetting aliens to elude examination and inspection by the United States immigration officials. The defendant pleaded guilty on March 26, 1970. On July 28, 1970, the court issued a writ of habeas corpus ad prosequendum to the federal correctional institution in La Tuna, Texas, to produce

the defendant in court for sentencing the next day, but he had been transferred elsewhere and the writ was returned unserved. In June, 1971, the defendant was released, but was reincarcerated for a separate offense. On November 10, 1972, the court issued another writ to produce the defendant for sentencing, and he appeared on November 14, 1972. The defendant challenged the thirty-two month delay in sentencing. Id., 191.

In determining whether a defendant's speedy trial right had been violated by a delay in sentencing, the court stated that "[i]f there has been an unreasonable delay, and if that delay results in prejudice to the defendant, then a violation has occurred." Id., 192. After attributing the delay solely to the lack of due diligence by the state, the court found that the defendant had been prejudiced by the "extreme delay" because the defendant received a harsher penalty than if he had been sentenced within a reasonable amount of time after the conviction. Id. This finding was based on the following statement made by the trial court during sentencing: " 'The court deferred sentencing, and if [the defendant] had not got in this other trouble I might not have given him time to serve, but it is obvious that this man is not going to profit by his past experiences . . . .' The court stated to [the defendant], 'It is possible I would have imposed a different sentence if you had behaved yourself. I was waiting to see what you were going to do. You get out and get right back into the same thing. . . .' " Id., 191–92. The court then imposed the maximum sentence of six months, on each count, to be served consecutively. Id., 192.

The *Juarez-Casares* court tested whether the defendant's right to a speedy sentencing had been violated by assessing the prejudice to the defendant, namely that the delay caused an increased punishment. Because we have no Connecticut decision or statutory guidance, we must establish for ourselves what additional factors are

relevant in determining if a defendant's right to a speedy sentencing has been denied. We have determined that the factors in the related case of *Barker* v. *Wingo*, supra, 407 U.S. 530, which relate to a speedy trial, may be adapted and expanded to a speedy sentencing situation. Such judicial creativity is countenanced when needed to establish rules for situations that do not quite fit the original situation for which other rules were created. *Newman* v. *Newman*, 235 Conn. 82, 99, 663 A.2d 980 (1995). These factors are the length of the delay, whether the defendant has had a prolonged confinement while awaiting sentencing, whether the delay was purposeful by the state, whether the delay was caused by the defendant, whether the defendant sought to be sentenced, how he asserted his right to be sentenced, whether the failure to sentence created a danger that coercion would be used to obtain cooperation on unrelated matters, whether the lack of a judgment lessened the chance of vindication on appeal, and whether the defendant's ability to settle affairs, plan for the future and engage in rehabilitation were disturbed.

As in the right to a speedy trial, we use the length of the delay in sentencing as a triggering mechanism because, until there is an extensive delay, there is no necessity for inquiry into the other factors that go into the balance. No fixed amount of time will necessarily implicate a violation of the right to a speedy trial, but rather all the factors of the test must be taken into account. The length of the delay is significant because "it affects the legitimacy of the reasons for delay and the likelihood that it had prejudicial effects." *Dickey* v. *Florida*, 398 U.S. 30, 48 n.12, 90 S. Ct. 1564, 26 L. Ed. 2d 26 (1970). In the present case, the defendant was convicted on August 13, 1991, and was not sentenced until June 30, 1993, a delay of almost two years. The length of delay from conviction to sentencing warrants an inquiry into other relevant factors.

Although there was a twenty-two month delay between the conviction and sentencing, the record shows that posttrial motions contributed to the delay in sentencing. On August 16, 1991, the defendant moved for an acquittal, on the basis of an alleged denial of a right to a speedy trial, and for a new trial, citing numerous issues, namely that the evidence was insufficient to support the jury's verdict, that the jury was prejudiced by the trial court's questioning and conduct, that the trial court improperly admitted evidence that lacked foundation, that the trial court improperly instructed the jury, that the conviction of certain charges violated the defendant's double jeopardy right, that the trial court improperly allowed hearsay and prejudicial testimony, and that the arrest warrant was defective. On December 31, 1991, the trial court heard oral argument on the motions. The defendant filed a memorandum of law in support of the motions on March 26, 1992. The trial court denied the motions on April 2, 1993, with a thorough and thoughtful memorandum of decision, totaling fifty-three pages. Although approximately seven months of the delay is attributed to the defendant, the court took approximately twelve months to decide the issue from the time that the defendant's memorandum was filed. The defendant, however, made no motion to schedule sentencing, and has neither been incarcerated nor has he served any portion of the sentence finally imposed. The defendant does not argue, and the record does not indicate, that this delay was purposeful or oppressive, or that the delay was used for improper purposes or to obtain some advantage for the state.

This court must also review whether and how the defendant asserted his speedy sentencing right. "Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length

of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain." *Barker* v. *Wingo*, supra, 407 U.S. 531. The defendant's assertion of his speedy sentencing right, therefore, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial. Id., 532.

The defendant took no action for one year while the court decided posttrial motions, and never raised the delay in sentencing as an issue until the day before his scheduled sentencing. The defendant does not offer any explanation for this failure. In accordance with *Barker*, that failure makes it difficult for the defendant to prevail. Id.

Finally, this court must determine what prejudice, if any, was caused by the delay. The defendant argues that he was prejudiced because the conviction "hung over his head" for many months, thus preventing him from obtaining gainful employment and from traveling, and causing him great anxiety, which affected his health. Although the speedy trial right recognizes an interest in minimizing anxiety and concern of *the accused*, this interest, when adapted to the speedy sentencing right, must receive less consideration because a defendant's guilt has already been determined by a conviction. If the defendant in the present case had concerns over the prejudicial effect the delay would have on him personally and on his appellate defense, he could have asserted the right sooner than almost two years after conviction and one day before sentencing.

The defendant also argues that the delay might have impaired his ability to present a defense in the event

the case had to be remanded for a new trial because after so much time, witnesses might have difficulty recalling the details of the incident. This argument, however, is merely speculative and does not show actual prejudice. Nor has the defendant shown actual prejudice arising from the failure to obtain a speedy appeal, or from an increased punishment, or from excessive confinement, or from a specific inability to settle his affairs or to plan his future, or from coercion by the state to obtain cooperation in some other matter.

We conclude that no violation of the defendant's constitutional right to speedy sentencing exists.

## II

## SUFFICIENCY OF THE EVIDENCE

The defendant next argues that the trial court improperly denied his motion for judgment of acquittal. The defendant claims that the state failed to prove an element of criminal impersonation because it did not prove that the defendant did not have arrest authority in Plymouth.[14] The defendant argues that there are five classes of public officials with arrest authority in Plymouth and that the state introduced evidence as to only three of those classes, namely, Plymouth police officers, Litchfield county sheriffs, and Connecticut state police officers. The defendant claims that the state produced no evidence that the defendant was not a Plymouth town constable or that he was not a public official from another town or county permitted to make an arrest out of that jurisdiction in Plymouth, and that, therefore,

---

[14] The defendant also claims that if the state failed to prove that the defendant was not a police officer with arrest authority in Plymouth, the crime of reckless driving would also require a judgment of acquittal because police officers are exempt from the motor vehicle laws of this state. In view of our conclusion that the jury could have found beyond a reasonable doubt that the defendant was not a public servant and had no arrest authority in Plymouth, this claim has no merit.

the state did not prove that the defendant did not have arrest authority in Plymouth.

" 'When a claim on appeal challenges the sufficiency of the evidence, we undertake a two part task. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' [*State* v. *Simino*, 200 Conn. 113, 116–17, 509 A.2d 1039 (1986)]." *State* v. *Summerville*, 13 Conn. App. 175, 184–85, 535 A.2d 818 (1988).

Subdivision (3) of General Statutes § 53a-130 (a) requires that the state prove that (1) the defendant pretended to be a public servant and (2) the defendant intended to induce another to submit to such pretended official authority or to act in reliance upon that pretense. In order for the state to prove the first element of this charge, it must prove that the person charged is not a public servant. "In other words, the state ha[s] the burden of proving the negative fact that the defendant was not a public servant at the time of the offense." *State* v. *Giorgio*, 2 Conn. App. 204, 210, 477 A.2d 134 (1984). The state, however, need not prove that the defendant was not a public servant anywhere in Connecticut or elsewhere.

The information charged the defendant with criminal impersonation in Plymouth, and the state was not required to research the records of 168 other towns and cities to prove that the defendant was not a public servant elsewhere because such knowledge is peculiarly within the control of the defendant. Id., 210–11. A statute need not list all the possible ways in which it could be violated. Id., 210.

The defendant introduced evidence that sometime prior to September 28, 1989, he had been an auxiliary police officer in Torrington, but the state's evidence showed that the auxiliary police unit of Torrington was deactivated in 1986, which was evidence sufficient for the jury to infer that the defendant had no arrest authority conferred by Torrington at the time he allegedly was impersonating a public servant. The defendant testified that he was not performing any duties for Torrington at the time of the alleged offense.

The state also presented evidence that the defendant was a resident of Torrington at the time of the incident. The jury could infer reasonably from that evidence that the defendant was not a resident of Plymouth and, therefore, could not be a constable in Plymouth.[15]

Although members of a local police force are authorized to make arrests for felonies outside the jurisdiction of that local force; see *State* v. *Kuskowski*, 200 Conn. 82, 86, 510 A.2d 172 (1986); and a member of a local police force who observes a criminal offense within the local jurisdiction may pursue the offender outside that jurisdiction; see *State* v. *Harrison*, 30 Conn. App. 108, 114–17, 618 A.2d 1381 (1993), aff'd, 228 Conn. 758, 638 A.2d 601 (1994); there was no evidence from which the jury could conclude that the defendant was a member of a local police force with arrest authority, or that he was attempting to make a felony arrest.

We conclude that the trial court properly denied the defendant's motion for a judgment of acquittal because the state had presented evidence from which a jury could have concluded beyond a reasonable doubt that the defendant was not a public servant at the time of the alleged incident.

---

[15] By law, a Plymouth town constable must be a resident of Plymouth. See General Statutes §§ 9-185, 9-186 and 9-200.

## III

## JURY INSTRUCTIONS

The defendant next claims that the trial court improperly instructed the jury on several issues. Our standard of review in cases in which the defendant claims that the instructions were constitutionally deficient is whether it is reasonably possible that the instructions misled the jury. *State* v. *Wolff*, 29 Conn. App. 524, 530, 616 A.2d 1143 (1992). In assessing the claim, the jury charge must be read as a whole, not in artificial isolation from the overall charge. *State* v. *Miller*, 36 Conn. App. 506, 511, 651 A.2d 1318, cert. denied, 232 Conn. 912, 654 A.2d 357 (1995). "The principle function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Taylor*, 37 Conn. App. 464, 469, 657 A.2d 659, cert. denied, 234 Conn. 907, 660 A.2d 859 (1995).

## A

The defendant claims that the trial court misled the jury when it told the jury that "even if the defendant was a Torrington auxiliary policeman, that position would not give him police authority in the town of Plymouth."[16] He argues that his alleged status as an

---

[16] The judge instructed the jury as follows: "Now, in the first count, the defendant is charged with the crime of criminal impersonation . . . . Criminal impersonation, the statute is called § 53a-130, provides as follows and pertinent parts: A person is guilty of criminal impersonation when he pretends to be a public servant with intent to induce another to submit to such pretend official authority or otherwise to act in reliance upon that pretense. Thus there were three main elements to this charge. You must determine each of them to be proved beyond a reasonable doubt in order for you to find the defendant guilty. I will explain each of these three elements to you in detail, but briefly the three main elements are: One, the defendant was not a public official. Two, he pretended to be a public official. And three, he acted as though he were a public official intending that other people would think he was a public official and submit to his pretended authority or otherwise act in reliance on this pretended authority.

auxiliary police officer in Torrington may serve as a defense to the charge of criminal impersonation. The defendant testified that the auxiliary police in Torrington had been placed on inactive status by the chief of police in 1986 and, as a result, he testified that he was not assigned any duties subsequent to that order. He also testified that he had not been assigned any duties on the day of the alleged incident that gave rise to the criminal charges. Furthermore, he testified that he was not in Plymouth on the date alleged and had not chased a person on a dirt bike. The trial court was correct that there was no evidence from which a jury could conclude that his status in Torrington gave him arrest authority in Plymouth, and, therefore, the charge was proper and did not mislead the jury.

B

The defendant's next two claims challenge the trial court's instructions on the elements of criminal impersonation. First, the defendant argues that the trial court improperly refused to instruct the jury that the state had the burden of proving that the defendant was not an officer or employee of *any* government branch, subdivision, or agency. Second, the defendant claims that

"What are we talking about in this case? Now, in this case the defendant is charged with pretending to be a public official, a police official. A police official having police authority in the town of Plymouth. He is charged with acting so with the intent to induce other persons or other persons to submit to his pretended police authority or otherwise act in reliance on that pretense. Now the first thing you must determine was, did the defendant have police authority in the town of Plymouth? It's the state's burden to prove beyond a reasonable doubt that the defendant did not have police authority in Plymouth. In order for the defendant to be found guilty, you must find that he did not have police authority in Plymouth. Now, there has been evidence about the defendant's having been a member of the auxiliary police in Torrington. I charge you that even if the defendant was a Torrington auxiliary policeman, that position would not give him police authority in the town of Plymouth. Again, it's the state's burden to prove beyond a reasonable doubt that the defendant did not have police authority in Plymouth."

the trial court failed to instruct the jury that they could convict only if they found that the defendant knew that he did not have authority to make an arrest in Plymouth. These issues overlap with his claim that the state failed to prove all the elements of criminal impersonation.

Section 53a-130 (a) (3) provides in pertinent part: "A person is guilty of criminal impersonation when he . . . pretends to be a public servant . . . with intent to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense." *State* v. *Giorgio*, supra, 2 Conn. App. 209–10, relying on General Statutes § 53a-146 (3), defines public servant as " 'an officer or employee of government, elected or appointed, and any person participating as adviser, consultant or otherwise, paid or unpaid, in performing a governmental function.' "

The state had the burden of proving that the defendant, in Plymouth, on September 28, 1989, pretended to be a public servant, that is a public servant with arrest authority in Plymouth. We have previously discussed that the state did not have the burden of proving that the defendant was not a public servant *anywhere*. The defendant's request for such an instruction was properly ignored.

The defendant claims that the court should have given an instruction that the defendant must be found not guilty if the state failed to prove that the defendant knew that he had no authority to make an arrest in Plymouth. The defendant did not request this charge, but because there is an adequate record for its review, and it concerns a constitutional claim relating to a misstatement of an element of the crime, we will review it. *State* v. *Denby*, 235 Conn. 477, 483, 668 A.2d 682 (1995); *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The jury was instructed that the state was required to prove that the defendant *pretended* to

be a public servant, a police officer with arrest authority in Plymouth, *intending* to induce another to submit to such *pretended* official authority or to act in reliance on that pretense.

The defendant argues that it is not enough the state prove that the defendant "pretends to be a public servant . . . with intent to induce another to submit to such pretended official authority"; General Statutes § 53a-130 (a) (3); but must prove that the defendant also knew that he was not a police officer.

The court began its charge by stating the elements of § 53a-130 (a) (3) as follows: "One the defendant was not a public official. Two, he pretended to be a public official. And three, he acted as though he were a public official intending that other people would think he was a public official and submit to his pretended authority or otherwise act in reliance on this pretended authority."

"Pretend" in common parlance is to make-believe, to feign, or to conduct a sham. To pretend implies an awareness on the part of the actor. The word is not defined in the penal code, nor is it defined in any Connecticut case cited by either party. Where a statute uses language that requires no legal definition because it has a commonly accepted meaning, there is no need to define it for the jury. *Southington* v. *State Board of Labor Relations*, 210 Conn. 549, 561, 556 A.2d 166 (1989). The defendant testified that Torrington's auxiliary police unit had an inactive status, that he had been assigned no duties by the Torrington police department for more than three years, and that at the time the offenses were allegedly committed he was not performing any duties for the Torrington police department. The state introduced evidence to show he had no arrest authority in Plymouth, and that he used a personal vehicle equipped to look like a police cruiser. It was unnecessary for the court to define "pretend,"

or to state that the defendant must know that he was not a police officer in order to be found guilty. The everyday usage of the word in the case sufficiently apprised the jury of the meaning of "pretends" as used in the element of "pretends to be a public servant" in § 53a-130 (a) (3).

The defendant is attempting to read the mental state of "knowledge" into the statute. Section 53a-130 establishes an element of intent, not knowledge, for criminal impersonation. "When the commission of an offense defined in this title, or some element of an offense, requires a particular mental state, such mental state is ordinarily designated in the statute defining the offense by use of the terms 'intentionally', 'knowingly', 'recklessly' or 'criminal negligence', or by use of terms, such as 'with intent to defraud' and 'knowing it to be false', describing a specific kind of intent or knowledge. When one and only one of such terms appears in a statute defining an offense, it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears." General Statutes § 53a-5; see *State* v. *Denby,* supra, 235 Conn. 482. Thus, the intent to pretend is implied in the second element because the third element requires that there be an intent to have others submit to the *pretended* authority or act in reliance on the *pretended* authority. Furthermore, it would be difficult to pretend to be a public official without intending to do so, given the usual meaning of "pretend."

Section 53a-130 (a) (3) expressly requires the mental state of "intent." "A person is guilty of criminal impersonation when he . . . pretends to be a public servant . . . with *intent* to induce another to submit to such pretended official authority . . . ." (Emphasis added.) General Statutes § 53a-130 (a) (3). The statute does not establish a requirement that, in order to be convicted of criminal impersonation, the state must prove that

the defendant "knew" he was not a police officer. "An 'intent' element is not synonymous with a 'knowledge' element . . . ." *State* v. *Denby*, supra, 235 Conn. 482. The penal code defines knowledge and intent differently. General Statutes § 53a-3 (12) provides: "A person acts 'knowingly' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstances exists . . . ." "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ." General Statutes § 53a-3 (11). The court properly charged the jury. An element of the offense is intent, not knowledge, and we conclude that it was not reasonably possible that the jury was misled as to an element of criminal impersonation.

## IV

## EVIDENTIARY CLAIM

The defendant argues that the trial court improperly precluded testimony of two Torrington police officers. The defendant, in an offer of proof, claimed that they would confirm and corroborate the defendant's testimony that he was a member of a deactivated auxiliary unit in Torrington. Our standard of review in determining whether a trial court improperly precluded testimony is abuse of discretion. *State* v. *Aspinall*, 6 Conn. App. 546, 554, 506 A.2d 1063 (1986). "The trial judge must consider many factors in ruling on relevancy. The court must determine whether the proffered evidence is corroborative or coincidental, whether it is probative or tends to obfuscate, and whether it clarifies or obscures. In arriving at its conclusion, the trial court is in the best position to view the evidence in the context of the entire case, and we will not intervene unless there is a clear abuse of the court's discretion." Id.

The defendant and another witness had already presented evidence that the defendant was an inactive auxiliary police officer in Torrington. The trial court ruled that evidence regarding the defendant's status as an auxiliary police officer had no relevance unless the defendant presented evidence that on September 28, 1989, the day of the chase, the defendant was using his personal vehicle to chase the dirt bike operator in his capacity as an officer performing an official duty. The defendant failed to present such evidence.

The defendant argues that a showing that the defendant was chasing the dirt bike in his official capacity is not necessary in light of *State* v. *Andrews*, 33 Conn. App. 590, 637 A.2d 787, cert. denied, 229 Conn. 908, 640 A.2d 121 (1994). The defendant, however, incorrectly argues that *Andrews* supports his assertion that the defendant needed to prove only that he was an auxiliary police officer in order to negate an element of criminal impersonation. In *Andrews*, an off duty Shelton auxiliary police officer witnessed a vehicle driving in an erratic manner in Derby, telephoned the police on his cellular phone, and then followed the defendant. The car of the auxiliary police officer was equipped with a blue flashing light that was used to pull over the defendant when the officer observed that the defendant could not keep his vehicle on the road. The defendant was instructed to wait for the Derby police to arrive, and the defendant, without a request, gave his license and registration to the officer, who returned the items to the defendant. The defendant was charged with driving under the influence of intoxicating liquor or drugs. He moved to suppress the evidence and to dismiss the case on the ground that his fourth amendment right, which protects against unreasonable searches and seizures by the government, was violated. Id., 594. The trial court denied the motions, and the defendant entered a plea

of nolo contendere, conditioned on his right to appeal the denial of his motions. Id., 592.

On appeal, the defendant reasserted his fourth amendment claim. This court rejected this argument because the court found that there was no state action arising from the officer's conduct that would trigger a fourth amendment right. Id., 598. Taking into account the capacity in which the officer was acting when he initially confronted the situation and examining his conduct thereafter, it concluded that there was no state action. Id. *Andrews*, therefore, does not support the proposition that an auxiliary police officer from a deactivated unit, outside of his jurisdiction, need not be actively engaged in performing his duties in order to have arrest authority in that foreign jurisdiction. The trial court did not abuse its discretion in refusing to admit the two witnesses' testimony.

V

SENTENCE AS CRUEL AND UNUSUAL
PUNISHMENT

Finally, the defendant claims that the sentence he received constituted cruel and unusual punishment. "The federal constitutional prohibition against cruel and unusual punishment proscribes not only physically barbarous punishments but also penalties that are grossly disproportionate to the offense. *Hutto* v. *Finney*, 437 U.S. 678, 685, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978)." *State* v. *Thompson*, 197 Conn. 67, 80, 495 A.2d 1054 (1985). The defendant stated at sentencing that the court went beyond its power to impose some of the conditions of probation but was not any more specific than that. He made no constitutional argument. On appeal, he argues the conditions of probation are cruel and unusual, but cites no cases and makes no argument as to why that is so. He makes no argument

that the conditions are beyond the power of the court to impose. We refuse to consider such a nebulous claim.

The judgment is affirmed.

In this opinion the other judges concurred.